**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

BONNIE SHIBETTI and KATRINA PUCCINI,
individually and on behalf of all others similarly
situated,

                           Plaintiffs,

      -against-

Z RESTAURANT, DINER AND LOUNGE, INC.,
ADEL FATHELBAB, ADAM FATHELBAB,
KAMAL FATHELBAB, ESSAM ELBASSIONY,
MIKO ENTERPRISES, LLC, MICHAEL
SIDERAKIS, CHRISTOS SIDERAKIS,
KONSTANTINOS SIKLAS, CROWN CROPSEY
A VENUE LLC, LGMALONEY LLC, XYZ
CORP(s) 1-5, and JOHN DOE(s) 1-5,

                           Defendants.
--------------------------------------------------------X

**REPORT AND RECOMMENDATION**

18-CV-856 (ERK) (ST)

**TISCIONE, United States Magistrate Judge:**

       Plaintiffs Bonnie Shibetti and Katrina Puccini bring this action against the above-named

Defendants alleging claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*,

New York Labor Law ("NYLL"), N.Y. Lab. Law § 195(3), New York City Human Rights Law

("NYCHRL"), N.Y.C. Admin. Code, § 8–101 *et seq.*, and New York common law.  *See* Dkt. Nos.

1 (Complaint), 90 (Third Amended Complaint) ("TAC").  Plaintiffs seek to recover unpaid:

minimum wages, overtime compensation, and spread-of-hours pay.  In addition, Plaintiffs allege

that Defendants have engaged in a practice of creating and maintaining a hostile work environment

by refusing to take notice of, investigate, or discipline repeated acts of sexual assault and

harassment taken by Kamal Fathalbab, a male supervisor, and other male employees against

Shibetti, Puccini, and other female servers at the Parkview Diner.  TAC ¶ 2.  Plaintiffs also assert

that Defendants unlawfully retaliated against Shibetti for engaging in protected activity,

unlawfully discriminated against Puccini on the basis of her pregnancy status, and engaged in

negligent hiring and supervision of various employees.  TAC ¶¶ 3–4.  On November 29, 2018,

Defendant Z Restaurant, Diner and Lounge, Inc. ("Z Diner") filed a fully briefed Motion to Dismiss for Failure to State a Claim. *See* Dkt. Nos. 94, 96.[1]  On February 27, 2019, the Honorable Edward R. Korman referred Z Diner's Motion to this Court for a report and recommendation.  For the reasons set forth below, the Court respectfully recommends that Defendants' Motion be GRANTED in part and DENIED in part.

## I.    BACKGROUND[2]

Z Diner is a current or former owner, operator, licensor, licensee, lessee, or manager of a restaurant called Parkview Diner located in Brooklyn, New York.  TAC ¶ 12.  In June 2015, Shibetti was hired by Z Diner to work as a waitress at the Parkview Diner.  TAC ¶ 48.  During her training period, Shibetti worked three, eight-hour work shifts, for which she did not receive pay. TAC ¶ 50.  Following the training period, Shibetti worked at the Diner on Wednesdays through Sundays, from approximately 9:00 a.m. to 6:00 p.m.  TAC ¶ 51.  From the beginning of her employment in June 2015 to her termination in April 2016, Shibetti was paid at a rate of $2.00 per hour; she was never paid for any hours she worked in excess of forty hours in a given workweek. TAC ¶ 54.  The Complaint offers the following example as a typical workweek: "during the week of February 24–28, 2016, Shibetti was paid $80.00 for approximately forty-five (45) or more hours she worked at the Parkview Diner for an approximate effective rate of $1.78 per hour."  TAC ¶ 54.

Shibetti also alleges that she was subject to a hostile work environment and other sexually discriminatory and retaliatory actions.  TAC ¶ 64.  Shibetti alleges that her direct supervisor,

---

[1]    Defendants Adel Fathelbab, Adam Fathelbab, Kamal Fathelbab, and Essam Elbassiony submitted separate letters to the Court adopting Z Diner's Motion to Dismiss the Third Amended Complaint.  *See* Dkts. Nos. 97–100.  Accordingly, I refer to Z Diner's position as Defendants' position.

[2]    A court reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure looks at the "facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *2004 Stuart Moldaw Tr. v. XE L.I.F.E., LLC*, 374 F. App'x 78, 80 (2d Cir. 2010) (internal quotation marks and citation omitted).  In addition, a court may consider "matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Pacheco v. Chickpea at 14th St. Inc.*, No. 18-CV-6907 (JMF) (GWG), 2019 WL 2292641, at *2 (S.D.N.Y. May 30, 2019) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (other citations omitted)).

Kamal Fathelbab, sexually assaulted and harassed her on several occasions.  TAC ¶ 65.  On one occasion, Kamal Fathelbab followed Shibetti into the women's restroom, cornered her, and then pulled his penis out of his pants.  TAC ¶ 66.  During another instance, Kamal Fathalbab asked Shibetti to "touch his cock."  TAC ¶ 67.  Shibetti was "terrified, humiliated and distressed by these sexual assaults."  TAC ¶ 68.  Shibetti also learned that she was not the only victim—other female employees at the Diner told Shibetti that Kamal Fathelbab had subjected them to similar behavior.  TAC ¶ 69.  In addition, "other male employees" would touch Shibetti in sexually inappropriate ways and "leer and jeer" at her in a sexual manner.  TAC ¶ 76.

Shibetti complained to her supervisors about the inappropriate behavior of Kamal Fathalbab and other male employees at the Diner.  TAC ¶ 80.  According to Shibetti, her supervisors simply laughed at her.  TAC ¶ 81.  In April 2016, Shibetti once again approached her supervisors, this time to request that she be paid "on the books," at an amount meeting or exceeding the minimum wage, plus regular wage statements.  TAC ¶ 83.  A few days later Shibetti was terminated from her position at the Diner.  TAC ¶ 85.

Puccini also worked as a server at the Diner.  TAC ¶ 87.  Following her start in late 2015, she worked one, 4-hour training shift, for which she did not receive pay.  TAC ¶ 89.  In 2015 and 2016, Puccini worked at the Diner on Wednesdays and Thursdays, from approximately 5:00 p.m. to 12:00 a.m.; Fridays, from 9:00 p.m. to 6:00 a.m., Saturdays, from 6:00 p.m. to 6:00 a.m.; and Sundays, from 5:00 p.m. to 12:00 a.m.  TAC ¶ 90.  At all times, Puccini was paid at a rate of $5.00 per hour and never paid any wages for any hours worked in excess of forty hours in a workweek.  TAC ¶ 93.

In August 2016, Puccini was abruptly removed from the work schedule without notice.  TAC ¶ 98.  At the time, she was approximately six months pregnant.  TAC ¶ 98.  When Puccini asked Adel Fathelbab why he had removed her from the schedule, he allegedly said, "You're having the baby soon.  Come back after you give birth."  TAC ¶ 99.  Puccini, who had "fully intended on continuing work up until she gave birth, was humiliated and distressed by being removed from the schedule solely because she was pregnant."  TAC ¶ 100.  Puccini returned to

work at the Diner in 2017 following the birth of her child.  TAC ¶ 101.

Puccini was also allegedly subjected to a hostile work environment, sexual harassment, and retaliation.  TAC ¶¶ 104–06.  For instance, Kamal Fathalbab routinely showed pornographic photographs to Puccini and other female servers.  TAC ¶ 109.  Kamal Fathalbab even solicited sexually explicit photographs from Puccini, at times through lewd text message requests.  TAC ¶ 107.  On one occasion, Kamal Fathalbab drove Puccini to a hotel and told her that they should "get a room."  TAC ¶ 108.  Following Puccini's rejection of Kamal Fathalbab's unwanted sexual advances, he allegedly retaliated by scheduling her for fewer work shifts.  TAC ¶ 110.

On February 8, 2018, Shibetti filed the initial Complaint.  *See* Dkt. No. 1.  An Amended Complaint was filed on March 2, 2018, and a Second Amended Complaint was filed on June 29, 2018.  *See* Dkt. Nos. 6, 77.  On September 5, 2018, Shibetti's counsel moved to amend the complaint again.  *See* Dkt. No. 85.  Attached to the motion was a copy of the proposed Third Amended Complaint.  *See* Dkt. No. 85, Attachment #1.  On October 3, 2018, during a hearing on the record, the Court granted counsel's request for leave to amend the complaint (Dkt. No. 89 (Minute Entry)), and on October 12, 2018, Shibetti filed the Third Amended Complaint, adding Katrina Puccini as a plaintiff in the action.  *See* Dkt. No. 90.  In lieu of an answer, Defendant Z Diner filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Dkt. No. 94.

## II.   DISCUSSION

### A.   Standard of Review

When a party moves to dismiss a case under Rule 12(b)(6), a court must determine whether the complaint states a legally cognizable claim by offering allegations that, if true, would show that the plaintiff is entitled to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *accord LLM Bar Exam, LLC v. Barbri, Inc.*, 922 F.3d 136,

4

140 (2d Cir. 2019).  Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

In evaluating a motion to dismiss, courts use a "two-pronged approach" to determine whether a plaintiff has "nudged" his or her claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 679, 680.

> First, the court must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party, and second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and this determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Jackson v. Wells Fargo Home Mortg.*, No. 15-CV-5062 (PKC) (ST), 2018 WL 8369422, at *3 (E.D.N.Y. Aug. 10, 2018) (quoting *Iqbal*, 556 U.S. at 678, 679) (brackets and other citations omitted).

### B.    Analysis

### I.    Plaintiffs' Third Amended Complaint was Changed in Violation of the Court's Order

Defendants assert that the Third Amended Complaint must be dismissed because it was substantively altered from the Proposed Class Action Complaint that was attached to Plaintiffs' Motion to Amend.  By changing the Proposed Complaint, Defendants argue that Plaintiffs' counsel went beyond the Court's order granting leave to amend the complaint.  Although I agree that Plaintiffs' counsel violated the Court's order, dismissal is an overly drastic remedy in this circumstance.

On September 5, 2018, Plaintiffs submitted a motion to "request leave to file and serve the enclosed proposed Third Amended Collective and Class Action Complaint . . . ."  Dkt. No. 85, at 1.  Attached to the motion was a Proposed Class Action Complaint, as well as a Proposed Revised Scheduling Order.  *See* Dkt. No. 85, Exhs. A & B.  Defendants opposed the motion.  Dkt. No. 86.  The Court held an in-person hearing on October 3, 2018.  Dkt. No. 89.  During the hearing, Defendants' counsel expressed concern that Plaintiffs' counsel would change the Proposed

Complaint if granted leave by the Court.  The Court responded to these concerns by stating that an order granting Plaintiffs' motion for leave to amend the complaint would *only* grant Plaintiffs' counsel permission to file the proposed class action complaint that was originally attached to their motion to amend.  The Court asked Plaintiffs' counsel whether they had any intention to amend the complaint beyond the proposed version, and counsel confirmed that they would not change the complaint.

Despite the Court's transparent ruling, Plaintiffs' counsel strayed from their in-court representations and changed the complaint by widening the scope of the action.  On   October 12, 2018, Plaintiffs filed a Third Amended Collective and Class Action Complaint.  Dkt. No. 90. The Proposed Complaint included within its scope "[a]ll persons employed by defendants at any time between *September __, 2015* through the present"—the later, filed complaint was changed to include "[a]ll persons employed by defendants at any time between *February 8, 2015* through the present[.]"  *Compare* Dkt. No. 85, Exh. A ¶ 26, *with* Dkt. No. 90 ¶ 26 (emphasis added); *see also* Dkt. No. 90 ¶ 38.

As such, in filing their Third Amended Collective and Class Action Complaint, Plaintiffs violated the Court's order granting leave to file the Proposed Class Action Complaint that was attached to their motion.  Defendants propose several possible sanctions for Plaintiffs' violation of a court order: (1) rescind the order granting leave to file a third amended complaint; (2) dismiss the claims for relief relating to the collective action and class action allegations; or (3) dismiss the Third Amended Complaint entirely.  Dkt. No. 96 (Memorandum of Law in Support of Defendant's Motion to Dismiss the Third Amended Collective and Class Action Complaint) ("Defs.' Mem.") at 4.

A district court has the power to dismiss an action when a litigant "fails to . . . comply with . . . a court order . . . ."  Fed. R. Civ. P. 41(b); *see Lucas v. Miles*, 84 F.3d 532 (2d Cir. 1996); *see also Malley v. Corp. Counsel of City of New York*, 9 F. App'x 58, 60 (2d Cir. 2001) ("A court may order sanctions against a party who files pleadings in contravention of a court order").  Even where dismissal is an option, courts have recognized that "dismissal is a harsh remedy and is appropriate

only in extreme situations." *Lucas*, 84 F.3d at 535 (citing *Alvarez v. Simmons Market Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir. 1988)).  Due to the severity of the remedy, dismissal must "'be proceeded by particular procedural prerequisites,' including 'notice of the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard.'" *Smalls v. Cnty. of Suffolk*, 718 F. App'x 16, 19 (2d Cir. 2017) (quoting *Baptiste v. Sommers*, 768 F.3d 212, 217 (2d Cir. 2014) (other citation omitted)).

Even were this Court to invoke the procedural protections listed above, dismissal is not the right remedy in this case.  Although the respective changes are substantive, and not *de minimis*, Plaintiffs had no indication that a failure to comply with the Court's order would result in dismissal.  *See Lucas*, 84 F.3d at 535 (noting that whether litigant "was on notice that failure to comply [with court order] would result in dismissal" is an important factor for courts considering dismissal).  Defendants have not cited any caselaw where a litigant's similar transgression was met with such a harsh sanction.

Despite the improper change, the proper remedy is to permit Plaintiffs to file the Proposed Class Action Complaint without any sanction from the Court.  Allowing Plaintiffs to file the Proposed Complaint will simply put Defendants back in the same position that they were in immediately following the Court's Order granting leave to amend.  Defendants do not allege any prejudice from the momentary change, and this Court declines to impose a harsh sanction where a lesser remedy will do.  *See, e.g.*, *Smalls*, 718 F. App'x at 19 (finding dismissal an overly harsh remedy for counsel's late arrival to a pretrial conference when opposing counsel was not "significantly prejudiced" by the delay).

Accordingly, I recommend that the Court decline the proposed sanctions, strike the Third Amended Complaint and allow Plaintiffs to file the Proposed Class Action Complaint that was originally attached to their Motion to Amend.

## II.    Plaintiffs Have Alleged Plausible Unpaid Minimum Wage Claims

Defendants argue that Plaintiffs' FLSA and NYLL minimum wage claims must be dismissed because Plaintiffs did not plead sufficient facts to grant relief.  According to Defendants,

Shibetti's allegations "are all based on approximations and are not an accurate accounting of the actual hours Shibetti worked on a weekly basis." Defs.' Mem. at 4. Furthermore, Defendants argue that Shibetti does not allege the amount of money she earned in tips in any given week. Defendants assert that Puccini's claim must fail, as well, due to the fact that she "does not adequately allege sufficient facts about her salary and her accurate working hours such that a simple arithmetical calculation can determine the amount owed to the Plaintiff per pay period." Defs.' Mem. at 6.

The federal Fair Labor Standards Act requires that employers pay "employees . . . engaged in commerce" a certain hourly wage. 29 U.S.C. § 206(a). Likewise, the New York Labor Law requires state employers to pay their "employees" a specified minimum hourly wage. N.Y. Lab. Law § 652. The federal minimum wage as set by the FLSA was $7.25 an hour at all times relevant to this litigation, see 29 U.S.C. § 206(a)(1)(C), and the New York State minimum wage was $8.75 and $9.00 during the time period at issue in this case. N.Y. Lab. Law § 652.1 (setting the minimum wage at $8.75/hour up to December 30, 2015 and at $9.00/hour thereafter); *but see* N.Y. Lab. Law § 652.1(a) (setting higher minimum wage rates for employers in New York City). "Where a state's minimum wage is higher than the federal minimum wage, the state's minimum wage must be paid by the employer to satisfy FLSA's minimum wage requirement." *Pichardo v. El Mismo Rincon Latino Corp.*, No. 17-CV-7439 (FB) (SJB), 2018 WL 4101844, at *4 (E.D.N.Y. Aug. 7, 2018), *report and recommendation adopted*, No. 17-CV-7439 (FB) (SJB), 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018).

"An employee bringing an action for unpaid minimum wages under the FLSA and the NYLL 'has the burden of proving that he performed work for which he was not properly compensated.'" *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 41 (E.D.N.Y. 2015) (quoting *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011)). An employee can meet this burden "through estimates based on his own recollection[.]" *Id.* at 42 n.10 (quoting *Jemine v. Dennis*, 901 F. Supp. 2d 365, 376 (E.D.N.Y. 2012)). According to Plaintiffs' complaint, Z Diner failed to maintain accurate and complete employment records. *See* TAC ¶¶

8

52, 91.[3]  In this circumstance, Plaintiffs need only "submit 'sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred.'"  *Jemine*, 901 F. Supp. 2d at 376 (quoting *Reich v. S. New England Telecom Corp.*, 121 F.3d 58, 66 (2d Cir. 1997) (other citation omitted)).

In this case, Plaintiffs have pleaded sufficient facts from which to infer minimum wage violations with respect to Shibetti.  Shibetti alleges that she was hired in June 2015 and terminated in April 2016.  TAC ¶ 57.  Plaintiffs allege, "[d]uring the time period of her employment, Shibetti worked at the Parkview Diner on Wednesdays through Sundays, from approximately 9:00 a.m. to 6:00 p.m."[4]  TAC ¶ 51.  Furthermore, "Shibetti was paid at a rate of $2.00 per hour . . . ."  TAC ¶ 54.  Thus, Shibetti alleges her term of employment, the approximate number of hours that she worked in a given workweek (forty-five), and her rate of pay, which is far less than both the state and federal minimum wage standards.  *See* N.Y. Lab. Law § 652.1; 29 U.S.C. § 206(a)(1)(C).

Likewise, Plaintiffs have alleged a sufficient case with respect to Puccini.  Plaintiffs allege that Puccini began working at the Diner in late 2015.  TAC ¶ 87.  She was placed on unpaid leave in or around August 2016, re-started her work in "early 2017" following the birth of her child, and continues working at the Diner to date. TAC ¶¶ 98, 101.  Plaintiffs allege that, "[i]n 2015 and 2016, Puccini worked at the Parkview Diner on Wednesdays and Thursdays, from approximately 5:00 p.m. to 12:00 a.m.; Fridays, from 9:00 p.m. to 6:00 a.m., Saturdays, from 6:00 p.m. to 6:00 a.m.; and Sundays, from 5:00 p.m. to 12:00 a.m." TAC ¶ 90.  "In 2015 and 2016, Puccini was

---

[3]      In the Third Amended Complaint, Plaintiffs allege that Defendants failed and refused to pay both Shibetti and Puccini "on the books." TAC ¶¶ 52, 91.  Although the phrase "on the books" may be subject to different interpretations, here it is interpreted in light of the standard of review in a 12(b)(6) proceeding (to "draw all reasonable inferences in favor of the plaintiff").  *Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*, No. 16-CV-541 (ARR) (JO), 2016 WL 7243541, at *2 (E.D.N.Y. Dec. 14, 2016) (citing *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013)).  Therefore, "on the books" is interpreted to refer to employment records.

[4]      Defendants argue that the allegations are too vague because they only allege "approximate" work hours.  A court in this District recently rejected an identical argument in *Escamilla v. Young Shing Trading Co., Inc.*, No. 17-CV-652 (MKB) (SJB), 2018 WL 1521858, at *3 (E.D.N.Y. Jan. 8, 2018).  "Nothing in *Lundy*, or indeed *Twombly*, precludes a plaintiff from relying on approximation or estimation. To do so would require Plaintiff to plead [work] hours with a mathematical precision that the Second Circuit found unnecessary." *Id.* Like in *Escamilla*, approximate work hours are sufficient for Plaintiffs to make a plausible claim for relief.

paid at a rate of $5.00 per hour . . . ."  TAC ¶ 93.  Like above, Puccini has pleaded sufficient facts from which to infer a labor law violation because she alleges her approximate term of employment, the number of hours worked (forty-two), and her rate of pay, which is less than both state and federal minimum wage standards.  *See Fermin*, 93 F. Supp. 3d at 42 (finding that the plaintiff-employees met their burden in a FLSA and NYLL minimum wage case where they "set forth timelines of their work schedules (both in terms of days per week and hours per day worked) and the corresponding pay rates").

Defendants argue that Plaintiffs' pleadings fail because Plaintiffs fail to allege the amounts received in tips and gratuities.  Defendants insist that the tip income should be added to the base pay that is divided by the number of hours worked during a given week in order to establish the hourly wage rate.  Defendants are correct that, in some circumstances, an employer can claim a tip credit, but this is not one of those circumstances.  "The FLSA permits an employer to pay tipped employees a fixed hourly rate less than the federal minimum wage as long as the employee's tips raise the employee's effective hourly wage rate above the minimum wage."  *Camara v. Kenner*, No. 16-CV-7078 (JGK), 2018 WL 1596195, at *11 (S.D.N.Y. Mar. 29, 2018) (citing 29 U.S.C. § 203(m)).  But an employer may not deduct its employees' tip income when calculating the wages owed if that employer fails to provide notice to the employee that it is taking the deduction (called a "tip credit").  *See id.*; *Demirovic v. Ortega*, No. 15-CV-327 (CLP), 2018 WL 1935981, at *2 n.3 (E.D.N.Y. Apr. 24, 2018); 29 C.F.R. § 531.59.  Plaintiffs here specifically alleged that the Diner failed to provide them with notice that they were claiming a tip credit on their compensation.  *See* TAC ¶¶ 55, 94.  Therefore, accepting these allegations as true, Plaintiffs did not need to allege the amounts received in tips and gratuities because the Diner was liable for paying the full statutory minimum wage.  *See Camara*, 2018 WL 1596195, at *11 ("If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage.") (citation and internal quotation marks omitted).

Contrary to Defendants' arguments, Plaintiffs have pleaded sufficient information from

which to infer that Plaintiffs "performed work for which [they were] not properly compensated." *Fermin*, 93 F. Supp. 3d at 41.

Accordingly, I recommend denying Defendants' motion to dismiss Plaintiffs' First and Second Claims for Relief.

### III.   Plaintiffs Have Alleged Plausible Unpaid Overtime Claims

Defendant also argues that Plaintiffs have not alleged sufficient information from which to infer a violation of the FLSA and NYLL with respect to unpaid overtime wages.  Defendant argues that Plaintiffs' allegations are vague because Plaintiffs have failed to allege specific dates.

To state an FLSA overtime claim, "a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Id.* (quoting *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)).

> "The FLSA mandates that [a covered employee] be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York–Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014). The NYLL largely adopts the same standard as the FLSA with respect to overtime compensation, *i.e.*, a covered employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata*, 723 F.3d at 200 (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2).

*Fermin*, 93 F. Supp. 3d at 43.

In *Lundy*, the Second Circuit affirmed the dismissal of FLSA overtime claims where one of the employee-plaintiffs alleged that she was forced to work uncompensated time in addition to her typical 37.5-hour workweek.  711 F.3d at 114.  The plaintiff alleged that she was not compensated for 30-minute lunch breaks, 15-minute periods before and after her scheduled shifts, a 30-minute-long monthly staff meeting, or respiratory therapy training, which is an annual 10-hour requirement for employees.  *Id.* at 115.  Despite the alleged period of unpaid work,[5] the Court held that the pleadings were insufficient.

---

[5]      Plaintiffs' did not bring a claim for unpaid minimum wages under § 206 of FLSA.  *See Lundy*, 711 F.3d at 110 n.3.

> She has not alleged that she ever *completely* missed *all three* meal breaks in a week, or that she also worked a full 15 minutes of uncompensated time around *every shift*; but even if she did, she would have alleged a total 39 hours and 45 minutes worked. A monthly 30–minute staff meeting, an installment of the ten yearly hours of training, or an additional or longer shift could theoretically put her over the 40–hour mark in one or another unspecified week (or weeks); but her allegations supply nothing but low-octane fuel for speculation, not the plausible claim that is required.

*Id.*

The Court held that Plaintiffs had "no plausible claim that FLSA was violated, because Plaintiffs have not alleged a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *Id.*; *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (holding that Plaintiffs failed to plead sufficient facts to make a plausible unpaid overtime claim under NYLL and FLSA when the complaint involved "essentially the same allegations" as *Lundy*). In *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013), the court likewise affirmed the dismissal of FLSA and NYLL claims where the plaintiff "did not estimate her hours in any or all weeks or provide any other factual context or content." The plaintiff merely parroted the statute's language—"her complaint was devoid of any numbers to consider beyond those plucked from the statute." *Id.*

In this case, Shibetti and Puccini adequately alleged unpaid overtime claims. Shibetti offered her work schedule (she worked nine-hour days, five times per week) and her hourly pay rate ($2.00). TAC ¶¶ 51, 54. Further, she alleged that she was "never paid any wages whatsoever for any hours worked in excess of forty (40) hours in a work week." TAC ¶ 54. Shibetti pleaded an adequate unpaid overtime claim because she asserted that she regularly worked in excess of forty hours in a week and was not paid *any* wages for this work, let alone the mandated overtime pay. Likewise, Puccini pleaded adequate facts for her claim. Like Shibetti, she pleaded her regular work schedule, which included forty-two-hour weeks. TAC ¶ 90. Puccini also alleges that she was never paid for *any* hours worked in excess of forty hours in a given workweek. TAC ¶ 93. So, unlike *Lundy*, here Plaintiffs have alleged both that they worked in excess of forty hours a week, and that they were not compensated for their overtime labor. This is sufficient to plead a

plausible claim for relief. *See, e.g.*, *Rios v. B B Q Chicken Don Alex, Inc.*, No. 16-CV-6630 (ILG), 2018 WL 264512, at *4 (E.D.N.Y. Jan. 2, 2018) (granting default judgment on unpaid overtime claim where plaintiff was paid $3.00 per hour even for hours worked in excess of 40 in a given workweek).

Accordingly, I recommend denying Defendants' motion to dismiss Plaintiffs' Third and Fourth Claims for Relief.

### IV.   Plaintiffs' Counsel Does Not Have a Conflict of Interest

Defendants next argue that Plaintiffs created a non-waivable conflict of interest when they filed their Third Amended Collective and Class Action Complaint. Specifically, Defendants argue that allowing Plaintiffs' counsel to represent the members of a putative collective/class action consisting of male and female employees would create a conflict of interest because of the female Plaintiffs' gender-based claims. Defendants note that Shibetti alleges that "other male employees" sexually assaulted her, harassed her, and discriminated against her in violation of the NYCHRL. The collective action is defined as including "[a]ll persons employed by defendants at any time between February 8, 2015 through the present . . . as waitstaff, bus persons, hosts or other non-exempt tipped positions at the Parkview Diner[.]"  TAC ¶ 26. The complaint sets forth the scope of the proposed class action in substantially similar terms. *See* TAC ¶ 29. Thus, "other male employees" are brought within the scope of the collective action or class action as liable parties, despite their inclusion within the putative class seeking relief. Defendants argue that this situation creates a "non-waivable" conflict of interest that necessitates dismissal of the claims for relief associated with the collective and class action allegations (Plaintiffs' Claims for Relief 1–6, 8, 11, and 12). This Court disagrees.

A lawyer owes an "undivided duty of loyalty" to his or her client that precludes an attorney from "representing one client in a litigation against another current client." *All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund*, No. 08-CV-1816 (LDW) (AKT), 2010 WL 2243351, at *3–4 (E.D.N.Y. June 1, 2010). Likewise, "an attorney may not knowingly reveal a confidence of his client or use a confidence of his client to the disadvantage of the client." *Evans v. Artek*

*Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) (citations omitted); *accord Obeid ex rel. Gemini Real Estate Advisors v. La Mack*, No. 14-CV-6498 (LTS) (MHD), 2015 WL 7180735, at *3 (S.D.N.Y. Nov. 9, 2015).  The party moving for disqualification has a "high standard of proof" due to the fact that such motions are "often interposed for tactical reasons" and "even when made in the best of faith, such motions inevitably cause delay."  *Evans*, 715 F.2d at 791–92.

At the outset, there are several unusual aspects about this claim.  A conflict of interest claim is typically postured as a motion to disqualify counsel, not a 12(b)(6) motion, and the remedy sought is precisely that—to disqualify an attorney who has an alleged conflict of interest.  *See, e.g.*, *Muniz v. Re Spec Corp.*, 230 F. Supp. 3d 147, 149 (S.D.N.Y. 2017); *Reyes v. Golden Krust Caribbean Bakery, Inc.*, No. 15-CV-7127 (DF), 2016 WL 4708953, at *1 (S.D.N.Y. Sept. 1, 2016); *All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund*, No. 08-CV-1816 (LDW) (AKT), 2010 WL 2243351, at *2 (E.D.N.Y. June 1, 2010); *see also Muniz v. Re Spec Corp.*, 230 F. Supp. 3d 147, 154 (S.D.N.Y. 2017) ("Given the court's oversight obligation, a motion to disqualify an attorney, even if brought by an unaffected party, is an appropriate means by which to bring the conflict issue to the court's attention.").  Defendants fail to cite any case law suggesting that dismissal is an appropriate remedy on a finding that a conflict exists between an attorney and his or her client.

Even *if* Defendants had filed a procedurally proper motion to disqualify Plaintiffs' counsel, their argument is without merit.  Defendants do not allege a present conflict of interest, but rather only a potential conflict that may arise in the future.  "The possibility that future conflicts of interest may arise does not require disqualification."  *Saint-Jean v. Emigrant Mortg. Co.*, No. 11-CV-2122 (SJ) (RLM), 2015 WL 3797198, at *2 (E.D.N.Y. June 18, 2015) (quoting *All Star Carts*, 2010 WL 2243351, at *4 (other citations omitted)); *accord Reyes*, 2016 WL 4708953, at *14 (S.D.N.Y. Sept. 1, 2016); *but see Coggins v. Cty. of Nassau*, 615 F. Supp. 2d 11, 34 (E.D.N.Y. 2009) (noting that potential conflicts may require disqualification in circumstances involving joint representation).  Defendants do not contend that Plaintiffs' counsel concurrently represents clients with conflicting interests, nor do Defendants argue that Plaintiffs' counsel has obtained a confidence that causes a

14

conflict of interest.  There is no dispute that Plaintiffs' counsel only represents Shibetti and Puccini at this time—and Defendants make no argument that counsel's current joint representation causes a conflict of interest.  Instead, Defendants argue that at some point in the future Plaintiffs' counsel *might* undertake representation of a putative class member who is one of the "other male employees" alleged to have engaged in sexual harassment at the Diner.  In the event that Plaintiffs' counsel enters into an attorney-client relationship with one or more of the "other male employees," Defendants' argue that Plaintiffs' counsel *could* learn information that would assist them in making their case.  Defendants' conflict of interest argument fails because it is based on speculation and not grounded in the reality of counsel's current representation—there is a mere "*possibility* that future conflicts of interest may arise . . . ." *Saint-Jean*, 2015 WL 3797198, at *2 (emphasis added). In this circumstance, disqualification is not warranted.  *Id.*; *see also All Star Carts*, 2010 WL 2243351, at *1–6 (denying disqualification motion where counsel for class action members also represented one of the defendant's largest competitors—who was possibly implicated in the alleged monopoly that was the subject of the suit—because the alleged conflict of interest was speculative); *Coggins*, 615 F. Supp. 2d at 34 (moving party's "bald assertions and speculation" regarding potential conflicts are "insufficient to warrant disqualification").

Accordingly, I recommend denying Defendants' motion with respect to their conflict of interest claim.

## V.      Class Certification Questions are Premature

Citing the four-prong test under Rule 23, Defendants contend that Plaintiffs cannot meet the standards for class certification.  Like above, with respect to their conflict of interest argument, Defendants choose an unusual vehicle to strike class claims.  Generally, a motion to strike class allegations is premature at this stage of litigation.  *See Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*, No. 16-CV-541 (ARR) (JO), 2016 WL 7243541, at *10 (E.D.N.Y. Dec. 14, 2016).  In the Second Circuit, "a motion to strike class claims is considered premature if the issues raised are 'the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b).'"  *Kassman v. KPMG LLP*, 925

15

F. Supp. 2d 453, 464 (S.D.N.Y. 2013) (quoting *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06-CIV-6198 (LAK) (JCF), 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008)); *see also Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (discussing the exception to the general rule that pre-discovery motions to strike class allegations are procedurally premature).

Here, the issues presented by Defendants are identical to those that would be decided in the context of a motion for class certification. Defendants allege that numerosity is not met, under Rule 23(a)(1), because "the complaint does not outline or explain as to why joinder is impracticable . . . [nor does it] allege the number of potential class members." Defs.' Mem., at 12–13. Defendants march through the next three prongs of Rule 23 in like fashion, alleging that Plaintiffs have not established commonality, typicality, or adequacy of representation. Because these issues are identical to those before a court deciding a motion for class certification, the arguments are premature at this stage of the proceedings.

Accordingly, I recommend that the Court deny Defendants' motion to strike class claims "without prejudice to the [Defendants'] ability to oppose class certification on these same grounds." *Kassman*, 925 F. Supp. 2d at 464–65 (quoting *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 574 (S.D.N.Y. 2012)).

## VI.   Plaintiffs Alleged a Plausible Claim for Retaliation

Defendants next argue that the Court should dismiss Shibetti's retaliation claim. Defendants contend that Shibetti was *not* fired from her job because she made complaints regarding certain labor law violations. Instead, she was fired because of an "established pattern of disrespect towards the owners, management and other employees during work hours." Defs.' Mem. at 14.

Section 215 of NYLL prohibits an "employer" from retaliating against an employee for making a "complaint to his or her employer." N.Y. Lab. Law § 215.1(a). To state a claim for retaliation, an employee must allege that, "while employed by the defendant, he or she made a complaint about the employer's violation of New York Labor Law and was terminated or

16

otherwise penalized, discriminated against, or subjected to an adverse employment action as a result." *Higueros v. New York State Catholic Health Plan, Inc.*, 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007). "An employee complaint or other communication need not make explicit reference to any section or provision of this chapter to trigger the protections of this section." *Clybourn v. Spiderbands LLC*, No. 18-CIV-03688 (ER), 2018 WL 6528234, at *4 (S.D.N.Y. Dec. 12, 2018) (quoting N.Y. Lab. Law § 215.1(a)). To state a claim for retaliation under the NYLL, a plaintiff must plead a "nexus" between the employee's complaint and the allegedly retaliatory action by the employer. *Higueros*, 526 F. Supp. 2d at 347; *see Kreinik v. Showbran Photo, Inc.*, No. 02-CV-1172 (RMB) (DF), 2003 WL 22339268, at *9 (S.D.N.Y. Oct. 14, 2003) (finding pleading sufficient where plaintiff's "allegations sufficiently plead that his labor law complaints were a motivating factor for [the employer's] adverse action"); *accord Mayer v. Neurological Surgery, P.C.*, No. 15-CV-0864 (DRH) (ARL), 2016 WL 347329, at *3 (E.D.N.Y. Jan. 28, 2016).

Defendants' arguments are plainly improper. Defendants argue that they are advancing the *true* reason for Shibetti's termination—that she was disrespectful and acted inappropriately during work hours. Although this information might be relevant at some stage of the proceedings, here the Court is considering a motion to dismiss, in which its task is to determine whether Plaintiffs have "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Generally, a motion court cannot look beyond the complaint in considering a motion to dismiss. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Defendants present factual statements in the discussion section of their memorandum, asking the Court to consider these statements as evidence. As should be obvious, this Court cannot consider these factual matters in a 12(b)(6) proceeding. *See Friedl v. City of New York*, 210 F.3d 79, 84 (2d Cir. 2000) (district court committed reversible error where it granted motion to dismiss based on factual statement contained in defendants' declaration in support of their motion to dismiss).

Defendants separately contend that Plaintiffs fail to meet the nexus requirement to show retaliation. According to Defendants, Shibetti has failed to proffer a connection between her complaint of unlawful activity and her subsequent termination from Z Diner. Defendants state

that Adel Fathelbab was the supervisor who both hired and fired Shibetti, and this somehow negates any inference that he retaliated on the basis of her complaint. Defendants also contend that Shibetti's short term of employment (nine months) tends to negate any inference of retaliation.

Considering the allegations in the Complaint as true, Plaintiffs have proffered sufficient information to state a claim for retaliation. The following statement is alleged in Plaintiffs' TAC:

> Defendants unlawfully retaliated against Shibetti by terminating her employment in response to protected complaints that she made about defendants' Labor Law violations.

TAC ¶ 146. In support, Plaintiffs alleged the following facts:

> In or around April 2016, Shibetti approached her supervisors and requested that she be paid "on the books," with regular wage statements, and at an amount meeting or exceeding the minimum wage.
>
> Her supervisors ignored her request.
>
> Just a few days later, Shibetti's employment with the Parkview Diner was unlawfully terminated.

TAC ¶¶ 83–5. The short period of time between Shibetti's complaint and her subsequent termination supports an inference that she was terminated *because of* her complaint. *See Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071 (SAS) (AJP), 2009 WL 289653, at *8 (S.D.N.Y. Jan. 30, 2009) (finding that termination one month after labor law complaint supported inference that the employee's complaint was a motivating factor for discharge); *Jacques v. DiMarzio, Inc.*, 200 F. Supp.2d 151, 155, 162 (E.D.N.Y. 2002) (finding that termination shortly after making NYLL complaint indicated that labor law complaints could have been a motivating factor for the employee's discharge); *cf. Bazignan v. Team Castle Hill Corp.*, No. 13-CV-8382 (PAC), 2015 WL 1000034, at *3 (S.D.N.Y. Mar. 5, 2015) (finding no nexus where plaintiff made daily labor law complaints over a substantial period of time prior to termination).

Plaintiffs make a plausible claim for retaliation. Shibetti states her term of employment, weekly hours, and pay rate. Shibetti claims that her pay rate was less than the statutory minimum hourly wage and she was not given regular wage statements in accordance with the New York

Labor Law.[6]  After asking that her employer comply with the law, she alleges that her supervisors "ignored her request" and shortly thereafter terminated her.  TAC ¶¶ 83–85.  *See Higueros*, 526 F. Supp. 2d at 346–48 (denying motion to dismiss retaliation claim where plaintiff alleged that she was fired as a result of her complaints regarding the employer's violation of New York Labor Law).

Accordingly, I recommend denying Defendants' motion to dismiss Plaintiffs' Seventh Claim for Relief.

### VII.    Plaintiffs Alleged a Plausible Sex Discrimination Claim

Defendants argue that the allegations of sexual harassment and assault are insufficient to state a cause of action for sex discrimination under NYCHRL.  Defendants maintain that the alleged harasser, Kamal Fathalbab, did not engage in sex discrimination under NYCHRL because he did not have the authority to make decisions affecting the professional status of the employees—he could not change an employee's pay rate, nor could he offer any "training opportunities" or "corporate advancement."  Defs.' Mem. at 16.

The New York City Human Rights Law makes it "an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the . . . gender . . . of any person . . . to discriminate against such person in compensation or in terms, conditions or privileges of employment."  N.Y.C. Admin. Code § 8-107.1(a)(3).  The phrase "discriminate against [the employee] in terms, conditions or privileges of employment" has been construed broadly to include any "unwanted gender-based conduct"—in other words, "liability is normally determined simply by the existence of differential treatment."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).  "To state a claim for gender discrimination under the NYCHRL, a 'plaintiff need only show differential treatment—that she is treated 'less well'—

---

[6]        Under the NYLL, an employer must "furnish each employee with a statement with every payment of wages that sets forth, among other information, the dates of work covered by that payment of wages; . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."  *Jeong Woo Kim v. 511 E 5th St., LLC*, 133 F. Supp. 3d 654, 663 (S.D.N.Y. 2015) (quoting N.Y. Lab. Law § 195(3) (internal quotation marks omitted)); *see also* N.Y. Lab. Law § 652 (mandating employers pay their employees a minimum hourly wage).

because of a discriminatory intent.'" *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 257 (S.D.N.Y. 2014) (quoting *Mihalik*, 715 F.3d at 110) (other citation omitted).[7]

At the outset, Plaintiffs were not required to plead discrimination based on a loss of pay or the inability to accrue "training opportunities" or "corporate advancement." *See Garcia v. New York City Health & Hosps. Corp.*, No. 15-CV-2119 (DAB), 2016 WL 4097850, at *7 (S.D.N.Y. July 26, 2016) ("The NYCHRL . . . does not require Plaintiff to allege that he suffered an 'adverse employment action' or that a 'tangible job benefit' has been withheld from him") (citations omitted). Plaintiffs allege that Defendants engaged in a pattern and practice of sexually harassing Shibetti, Puccini, and other female employees. With respect to Shibetti, these allegations include unwanted touching, sexual propositions, and lewd gestures. *See* TAC at ¶¶ 64–82. With respect to Puccini, these allegations include soliciting sexually explicit photographs from her, showing her pornographic images, and driving her to a hotel room, where Fathelbab proposed that they "get a room." All of these allegations are more than enough to make a plausible claim that the named Plaintiffs and others were, at least, treated "less well" than their male counterparts. *See, e.g.*, *Mihalik*, 715 F.3d at 114 (genuine dispute over gender discrimination claim where employee-plaintiff presented evidence that male employees openly viewed and shared pornography, objectified women, and subjected female employees to unwanted sexual propositions); *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 261 (S.D.N.Y. 2014) (plaintiff stated a claim for gender discrimination where "a male supervisor asked a female employee out to a bar, stroked her hand in a sexual manner, and twice attempted (and once succeeded) to kiss her on the neck").

Accordingly, I recommend denying Defendants' motion to dismiss Plaintiffs' Eighth Claim for Relief because Plaintiffs' allegations are sufficient to state a claim for sex discrimination.

---

[7]       Defendants are free to argue that the alleged conduct constituted mere "petty slights or trivial inconveniences"—see *Bright v. Coca Cola Refreshments USA, Inc.*, No. 12-CV-234 (BMC), 2014 WL 5587349, at *2 (E.D.N.Y. Nov. 3, 2014), *aff'd sub nom. Bright v. Coca-Cola Refreshments USA, Inc.*, 639 F. App'x 6 (2d Cir. 2015)—but that affirmative defense is premature in a pre-answer motion to dismiss. *See Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296, 311 n.10 (S.D.N.Y. 2016).

### VIII.   Plaintiffs Alleged a Plausible Pregnancy Discrimination Claim

Plaintiffs' Ninth Claim for Relief alleges that Defendants engaged in pregnancy discrimination against Puccini in violation of §§ 8-107(1) and (22) of the NYCHRL.  Defendants insist that Puccini "was not terminated or discharged from her employment at the Diner, but was provided with a much needed leave of absence during the last trimester of her pregnancy."  Defs.' Mem. at 17.  Following the birth of her child, "Puccini resumed her employment at the Diner and continues to presently work at the Diner."  *Id.*  Despite Defendants' admission that they placed Puccini on unpaid and unwanted leave when she was 6 months pregnant, they nonetheless state, "Puccini was not discriminated against in terms of compensation or in the conditions of employment."  *Id.* at 18.   Defendants' contend that they "simply balanced [Puccini's] responsibilities of her family life and made sure she received the proper rest and was placed on maternity leave."  *Id.*

"Although § 8–107(1) does not explicitly refer to pregnancy, the New York Court of Appeals has held that 'distinctions based solely upon a woman's pregnant condition constitute sexual discrimination.'"  *Sanchez v. El Rancho Sports Bar Corp.*, No. 13-CV-5119 (RA), 2015 WL 3999161, at *6 n.6 (S.D.N.Y. June 30, 2015) (*quoting Elaine W. v. Joint Diseases N. Gen. Hasp., Inc.*, 613 N.E.2d 523, 525 (N.Y. 1993)); *see also Wilcox v. Cornell Univ.*, 986 F. Supp. 2d 281, 285 (S.D.N.Y. 2013); *accord Chauca v. Abraham*, 841 F.3d 86, 90 n.2 (2d Cir. 2016).  So, in order to claim pregnancy discrimination under subsection (1), a "plaintiff must show that she was treated differently from others who took leave or were otherwise unable or unwilling to perform their duties for reasons unrelated to pregnancy or that she simply was treated differently because of her pregnancy."  *Wilcox*, 986 F. Supp. 2d at 285 (quoting *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 832 (S.D.N.Y. 2013)).

Section 8-107(22), on the other hand, explicitly lists pregnancy: "It shall be an unlawful discriminatory practice for an employer to refuse to provide a reasonable accommodation, as defined in section 8-102, to the needs of an employee for the employee's pregnancy, childbirth, or related medical condition . . . ."  N.Y.C. Admin. Code, § 8-107(22).  Section 8-102 defines a

"reasonable accommodation" as an "accommodation that can be made that does not cause undue hardship in the conduct of the covered entity's business."  N.Y.C. Admin. Code, § 8-102.  The legislative findings and intent make it clear that the provisions of this section apply to the conduct alleged in Plaintiffs' Complaint:

> The Council finds that pregnant women are vulnerable to discrimination in the workplace in New York City. For example, there are reports that women who request an accommodation that will allow them to maintain a healthy pregnancy, or who need a reasonable accommodation while recovering from childbirth, are being removed from their positions, **placed on unpaid leave**, or fired. It is the intent of the Council to combat this form of discrimination by requiring employers to provide reasonable accommodations to pregnant women and those who suffer medical conditions related to pregnancy and childbirth.

*See* N.Y.C. Admin. Code § 8-102, Note 3 (Provisions of L.L. 78/2013) (emphasis added).

Puccini's allegations easily clear the bar to make a plausible claim under both provisions. With respect to § 8–107(1), Puccini alleges that she was removed from the schedule when she was in the sixth month of her pregnancy.  While ordinarily a plaintiff might have difficulty showing a causal link to her status as a pregnant woman, here the supervisor allegedly told Puccini, in response to being confronted about her absence on the work schedule, to "come back after you give birth."  TAC ¶ 99.  This allegation states a claim that she was discriminated against on the basis of her status as a pregnant woman, *i.e.*, she "simply was treated differently because of her pregnancy."  *Wilcox*, 986 F. Supp. 2d at 285.  Likewise, Puccini makes a claim that she was not provided a reasonable accommodation—that she was not allowed to work during approximately the last trimester of her pregnancy.  In its list of reasons for enacting the provision, the legislature explicitly lists "placed on unpaid leave" as among the targeted practices that the legislature sought to eradicate by enacting § 8-107(22).  That is precisely the situation here, where Puccini alleges that she had a desire to work during her last trimester, but instead she was placed on unpaid leave by her employer.

Accordingly, I recommend denying Defendants' motion to dismiss Plaintiffs' Ninth Claim for Relief.

## IX.   Plaintiffs Alleged a Claim for Aiding and Abetting

In their Eleventh Claim for Relief, Plaintiffs allege that certain individuals are liable, under § 8-107(6) of the NYCHRL, for aiding, abetting, inciting, compelling and coercing the alleged harassing and discriminatory conduct.  TAC ¶¶ 162–63.  The individuals include: Adel Fathelbab, Adam Fathelbab, Kamal Fathelbab, Essam Elbassiony, and John Doe(s) 1–5.  Defendants argue that Plaintiffs have not stated a claim for relief because they have failed to allege facts indicating that the corporation is responsible for discriminating against Plaintiffs.

Section 8-107(6) states, "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."  N.Y.C. Admin. Code § 8-107.  The success of Plaintiffs' aiding and abetting claim rises and falls with its other claims—the named individuals can only be found liable on a theory of aiding and abetting if the employer is found liable as a principle for the underlying NYCHRL claim.  *See Torres v. New York Methodist Hospital*, No. 15-CV-1264 (PKC) (PK), 2016 WL 3561705, at *12 (E.D.N.Y. Jan. 7, 2016).

Section 8-107(13)(b) of the NYCHRL states, "[a]n employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent" in the following circumstances:

> (1) The employee or agent exercised managerial or supervisory responsibility; or
>
> (2) The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action . . . ; or
>
> (3) The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

N.Y.C. Admin. Code § 8-107(13)(b).

In their Twelfth Claim for Relief, Plaintiffs' allege employer liability under § 8-107(13). TAC ¶ 165–68.  "The NYCHRL imposes strict liability on employers for discriminatory acts of managerial employees."  *Chau v. Donovan*, 357 F. Supp. 3d 276 (S.D.N.Y. 2019) (citation

omitted).

Plaintiffs sufficiently allege employer liability based, at least, on the allegations that managers discriminated against them.  As stated above, Plaintiffs made a plausible claim that Kamal Fathelbab, their manager, discriminated against Shibetti on the basis of sex by repeatedly harassing and intimidating her in a sexually-suggestive way.  Likewise, Plaintiffs stated a claim that Adel Fathelbab, who is the current or former President of Z Diner, discriminated against her on the basis of her status as a pregnant woman when she was abruptly removed from the work schedule.

Accordingly, I recommend denying Defendants' motion to dismiss Plaintiffs' Eleventh Claim for Relief.

## X.   Plaintiffs' Claim of Negligent Hiring and Supervision is Preempted by State Law

Finally, Plaintiffs assert a common-law claim for negligent hiring and supervision. Defendants argue that Plaintiffs' claim must be dismissed because it is barred by the New York Workers' Compensation Law.  This Court agrees.

Chapter 67, section 29 of the New York Workers' Compensation Law states that it is "the exclusive remedy to an employee . . . when such employee is injured or killed by the negligence or wrong of another in the same employ . . . ."  N.Y. Workers' Comp. Law § 29.6.  The Law's exclusivity provision "does not, however, preclude an employee's suit if the employer committed an intentional tort or another person committed such an intentional wrong at the employer's direction." *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997) (citation omitted).

It is well-settled law in the Second Circuit that the New York Workers' Compensation Law is the sole remedy for damages caused by the negligence of an employer.  In *Torres*, the Second Circuit held that an employee's common-law negligence claim against an employer for failure to supervise an employee and prevent a hostile working environment was barred by the exclusivity provision that is found in § 29 of the New York Workers' Compensation Law.  116 F.3d at 640. Later, in *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 138 (2d Cir. 2001), that Court held that the

exclusivity provision also barred common-law negligence claims based on a theory of negligent retention and supervision. District courts have followed suit. *See, e.g.*, *Ingram v. Nassau Health Care Corp.*, No. 17-CV-05556 (JMA) (SIL), 2019 WL 1332857, at *9 (E.D.N.Y. Mar. 25, 2019) (dismissing negligence claim against former employer based on the exclusivity provision in New York Workers' Compensation Law); *Corrado v. New York Unified Court Sys.*, 163 F. Supp. 3d 1, 26 (E.D.N.Y. 2016) (same), *aff'd sub nom. Corrado v. New York State Unified Court Sys.*, 698 F. App'x 36 (2d Cir. 2017); *D'Annunzio v. Ayken, Inc.*, 25 F. Supp. 3d 281, 294 (E.D.N.Y. 2014) (same); *Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 666–67 (S.D.N.Y. 2007) (same); *Riscili v. Gibson Guitar Corp.*, No. 06-CIV-7596 (RJH), 2007 WL 2005555, at *5 (S.D.N.Y. July 10, 2007) (same); *Ribis v. Mike Barnard Chevrolet-Cadillac, Inc.*, 468 F. Supp. 2d 489, 507 (W.D.N.Y. 2007) (same); *Pellei v. Int'l Planned Parenthood Fed'n/W. Hemisphere Region, Inc.*, No. 96-CIV-7014 (WHP), 1999 WL 787753, at *13 (S.D.N.Y. Sept. 30, 1999) (same); *Ross v. Mitsuit Fudosan, Inc.*, 2 F. Supp. 2d 522, 533 (S.D.N.Y. 1998) (same).[8]

Accordingly, because Plaintiffs' negligent hiring and supervision claim is preempted by New York Workers' Compensation Law, I recommend that Plaintiffs' Thirteenth Claim for Relief be dismissed with prejudice.[9]

---

[8]        Plaintiffs dispute that the New York Workers' Compensation law is the exclusive remedy for negligence claims against employers in all circumstances. Citing *Tainsky v. Clarins USA, Inc.*, 363 F. Supp. 2d 578, 586 (S.D.N.Y. 2005), Plaintiffs state that there is an exception to the general rule of exclusivity when the employer has prior notice of an employee's dangerous propensities. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 11. We do not read *Tainsky* to create such an exception; but, in any event, Plaintiffs' argument is contrary to well-settled law in this Circuit, as discussed above. Although not cited by Plaintiffs, this Court recognizes that certain cases have refused to follow the exclusivity rule under the New York Workers' Compensation Law "despite law to the contrary." *See Linder v. City of New York*, 263 F. Supp. 2d 585, 591 (E.D.N.Y. 2003) (refusing to dismiss a negligent retention claim because "this Court is of the view that the New York Worker's Compensation Law does not bar such a claim") (citing *Chen v. Street Beat Sportswear, Inc.*, 226 F. Supp. 2d 355 (E.D.N.Y. 2002) (finding that the allegations were "reminiscent of a Dickens novel" and "must be considered regardless of [how] the pleader [defined the claims]" because the allegations were more akin to intentional wrongdoing)). We refuse to follow those cases here. *See D'Annunzio v. Ayken, Inc.*, 25 F. Supp. 3d 281 (E.D.N.Y. 2014) ("The *Linder* court's citation to—and contravention of—binding precedent is, to say the least, puzzling, and we are not of the view that a district court may disregard controlling Second Circuit precedent absent exceptional circumstances not present here") (quoting *Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 666 (S.D.N.Y. 2007)).

[9]        *See Corrado*, 163 F. Supp. 3d at 27; *see also Costa v. Astoria Federal Sav. And Loan Ass'n*, 995 F. Supp. 2d 146 (E.D.N.Y. 2014) (dismissing with prejudice where state law claims were preempted by ERISA).

## III.    CONCLUSION

I respectfully recommend Defendants' Motion to Dismiss be DENIED with respect to Plaintiffs' First through Twelfth Claims for Relief, and GRANTED with respect to Plaintiffs' Thirteenth Claim for Relief.  Separately, I recommend that the District Court strike Plaintiffs' Third Amended Complaint and order Plaintiffs to file the Proposed Class Action Complaint that was originally attached to their Motion to Amend.  *See* Dkt. No. 85, Exh. A.

## IV.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x. 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x. 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                                    /s/
                                              Steven L. Tiscione
                                              United States Magistrate Judge
                                              Eastern District of New York


Dated: Brooklyn, New York
        August 30, 2019