```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------  X
BONNIE SHIBETTI and KATHLEEN                              :
PUCCINI, individually and on behalf of all                :       **MEMORANDUM
others similarly situated,                                :       DECISION AND ORDER**
                                                          :
                          Plaintiffs,                     :       18-cv-856 (BMC)
                                                          :
         - against -                                      :
                                                          :
Z RESTAURANT, DINER AND LOUNGE,                           :
INC., ADEL FATHELBAB, ADAM                                :
FATHELBAB, KAMAL FATHELBAB, and                           :
ESSAM ELBASSIONY,                                         :
                                                          :
                          Defendants.                     :
----------------------------------------------------------  X
```

**COGAN**, District Judge.

Two plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and New York Labor Law ("NYLL"), § 650 *et seq*., for defendants' alleged failure to pay minimum wage, overtime, spread-of-hours pay, and other requirements under the NYLL. They also include numerous claims of gender discrimination and sexual harassment under state law. Defendant Z Diner, Restaurant and Lounge, Inc. d/b/a Parkview Diner ("Parkview") owns and runs a diner in Brooklyn. Adel Fathelbab ("Adel") and Adam Fathelbab ("Adam") (father and son), own 80% and 20% of Parkview, respectively, with Adel as the President and Adam as the Vice-President. Kamal Fathelbab ("Kamal"), Adel's brother and Adam's uncle, served as a manager of the diner and is accused of sexual harassment. Plaintiff Bonnie Shibetti worked at Parkview as a waitress from June 2015 through April 2016. Plaintiff Katrina Puccini worked at Parkview as a waitress from late 2015 to late 2018.

This decision disposes of three motions before me: (1) defendants' motion to dismiss all of the state law claims except the wage claims for lack of subject matter jurisdiction; (2) plaintiffs' motion for partial summary judgment; and (3) plaintiffs' motion for leave to proceed as a collective action under the FLSA.[1] My disposition of these motions, discussed below, is based on the following determinations:

- The minimal overlap between plaintiffs' wage claims (state and federal) and their state/city discrimination claims is not substantial enough to vest this Court with supplemental jurisdiction over their state/city gender discrimination claims;
- Plaintiff Puccini is owed a nominal but undisputed amount for unpaid training time, and plaintiff Shibetti is also owed money for unpaid training time, but there is an issue of fact as to how much defendants owe plaintiff Shibetti;
- The claim for unpaid training time is not time barred because defendants' failure to pay was willful;
- Defendant Adel Fathelbab is personally liable for any unpaid wages and wage compliance requirements, but there is an issue of fact as to whether Adam Fathelbab shares that liability;
- Defendants are liable as a matter of New York Labor Law for violating the requirements for providing notices relating to wages and tip credits, wage statements, and keeping records, but the amount owed for these violations is subject to the resolution of factual issues; and
- Plaintiffs may proceed as a collective action on their FLSA claims.

I. **Supplemental Jurisdiction over sex discrimination claims**

Plaintiffs contend that both their New York State Labor Law claims and their state and New York City law sexual harassment claims[2] are within my supplemental jurisdiction because of their FLSA claims. Defendants contend that the sexual harassment claims are not part of the

---

[1] There is also pending before me plaintiffs' motion for class certification of their state law claims. In light of the disposition of the other motions in this Order, the class certification motion is denied without prejudice to renewal consistent with the rulings in this Order.

[2] New York State Human Rights ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*; New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* ("NYCHRL").

2

same case or controversy as the FLSA claims under 28 U.S.C. § 1367(a), and that I have no supplemental jurisdiction over those claims.[3]

Section 1367(a) of Title 28, United States Code, grants federal courts supplemental jurisdiction over all claims that are so related to claims in the action within its original jurisdiction that the related claims form part of the same case or controversy under Article III of the Constitution. "The state and federal claims must derive from a common nucleus of operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). "[O]nce it is determined that a supplemental claim is related to the claim within the court's original jurisdiction such that they form the same case or controversy, supplemental jurisdiction over the related claim is mandatory." Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998). It is plaintiffs' burden to prove supplemental jurisdiction. See Al-Khazraji v. United States, 519 F. App'x 711, 713 (2d Cir. 2013) (citing Liranzo v. United States, 690 F.3d 78, 84 (2d Cir. 2012) (quotation marks omitted)).

Although I can easily see why plaintiffs want to place the sexual harassment proof before the same jury that considers the wage claims – the discrimination claims make defendants look terrible – those claims simply have nothing to do with whether plaintiffs were paid the minimum wage and overtime as required under the FLSA. The arguments plaintiffs have raised fail to convince me that the wage and discrimination claims here arise out of the same case or controversy.

---

[3] Defendants do not contend that, if I have supplemental jurisdiction over the sexual discrimination claims, I should decline to exercise that jurisdiction under 28 U.S.C. § 1367(c). Plaintiffs' opposition to the motion to dismiss does not distinguish between the existence of supplemental jurisdiction under subsection (a) and the district court's discretion, if it has such jurisdiction, to decline to exercise it under subsection (c). Only the former is involved in this motion.

First, plaintiffs contend that defendants' motion to dismiss is too late since it is after the conclusion of discovery that has already encompassed the discrimination claims. That might be a relevant consideration if defendants were asking me to decline to exercise supplemental jurisdiction over the discrimination claims as a matter of discretion under 28 U.S.C. § 1367(c). But they are not. Rather, their argument is that the mere existence of an employment relationship is insufficient to cause the claims to arise out of the same nucleus of operative fact, and thus I have no supplemental jurisdiction to decline to exercise in the first place. Since I never had supplemental jurisdiction to begin with, I have not gained it by the passage of time.[4]

Plaintiffs secondly point to allegations and testimony that they contend show the overlap between their wage claims and their discrimination claims. The sources which plaintiffs cite, however, show the opposite. For example, plaintiffs cite me to the third amended complaint, but the complaint clearly distinguishes between the FLSA and discrimination claims.

Third, plaintiffs discuss the merits of their discrimination claims. Those claims do seem quite strong on this record. But the evidence to which plaintiffs refers does not encompass the FLSA claims. In Puccini's affidavit to plaintiffs' collective action motion, she describes in vivid detail how Kamal repeatedly forced her to send him naked selfies via text message, forcibly grabbed and kissed her in Parkview's basement, and exposed himself to her. In the same declaration, she proceeds to describes how she was required to work without pay during her training period, consistently paid below the minimum wage, and never paid overtime. She also

---

[4] This is not to say that defendants' belated motion reflects good practice. Extensive discovery in this case has been taken on the discrimination claims, and the case could have been brought to trial much earlier had defendants previously sought to separate the wage claims from the discrimination claims. But I disagree with plaintiffs' conclusion that they have been prejudiced by the delay. They are free to walk across the street to Kings County Supreme Court, purchase an index number, and file a Request for Judicial Intervention to set a trial. Discovery is complete – plaintiffs can even advise the State Supreme Court Justice of my view on that – and I see no reason they would not be placed on the first available trial calendar.

4

observed Parkview "treating other employees the same way, including not providing them any paperwork or paychecks." Her affidavit makes clear that any evidence of defendants' timekeeping and wage practices are divorced from her allegations of sexual harassment against Kamal. Similarly, Shibetti's declaration to the same motion also describes how she was sexually assaulted by Kamal in the woman's bathroom and inappropriately groped by her male colleagues. But these incidents have nothing to do with her allegations that, like Puccini, she was never provided proper wage statements and notices and never paid minimum wage or overtime pay.

 Fourth, plaintiffs claim that, at least as to plaintiff Puccini, the harassing manager, Kamal, "subjected to her to quid pro quo sexual harassment that impacted her wages." There is solid evidence on that, but it has nothing to do with the FLSA. Puccini's assignment to less tables and undesirable shifts are relevant to her gender discrimination claims, but there is no contention that it is those hostile acts that drove plaintiff's wages below the minimum wage required by the FLSA, nor that those acts caused her to be paid a regular rate for overtime instead of the FLSA's required overtime rate. To the contrary, plaintiffs allege that they were paid less than the required minimum wage and overtime levels under the FLSA just like every other tipped worker at Parkview, male and female.

 Plaintiffs come closest to showing some overlap with regard to their retaliation claims under the FLSA and state discrimination law. They argue that at least with regard to plaintiff Shibetti, the evidence shows that she was terminated after complaining both about her wage violations and the discriminatory acts against her. That is an accurate portrayal of the timeline, but both the evidence and the complaint, as presented by plaintiffs, show that Shibetti was terminated almost immediately after she demanded to be placed "on the books" of the business,

not when she complained about harassment. The way plaintiffs have presented this case, and presumably would present it at trial, is that it was her demand for fair pay that got her fired, not her complaints about sexual harassment.

In fact, the discrimination claims in this case so profoundly overshadow the FLSA claims that even if I had supplemental jurisdiction over the discrimination claims – and I chose to exercise that jurisdiction – I would try the wage and discrimination cases separately. See Fed. R. Civ. P. 42(b).[5] The FLSA case here, like many, is straightforward. Defendants have none of the required records, and to the extent there are questions of credibility, they relate only to the hours that plaintiffs worked and what they were paid. It is a simple, almost arithmetic case that I can try in two or three days, maybe less. The discrimination case, however, as often happens, would require the jury to get into the weeds of the toxic environment at Parkview. There are nude pictures, lewd remarks, sexual assaults, quid pro quo proposals, and other intolerable conduct that has nothing to do with minimum wage and overtime. Adding that case to the FLSA case would exponentially multiply the length and complexity of a trial.[6]

It is important to note that even the FLSA claims, standing alone, offer plaintiffs no additional rights to those provided by the New York Labor Law. Indeed, the invocation of the FLSA seems nothing more than a jurisdictional excuse to have the case in federal court instead of state court. There are *no* remedies under the FLSA that plaintiffs cannot already obtain under the New York Labor Law – quite the contrary. The minimum wage and resultant overtime rates;

---

[5] If these allegations were tried together, defendants would be unfairly prejudiced due to the gravity and frequency of Kamal's alleged sexual misconduct and the remaining defendants' purported indifference to plaintiffs' plight. See Fed. R. Evid. 403.

[6] I do not make this point to explain why I am not exercising supplemental jurisdiction as a matter of discretion. As noted above, that is not the issue. But contrasting the two separate cases that plaintiffs want to try together illustrates why they do not arise out of a common nucleus of operative fact.

6

the posting of notices; the providing of tip credit notices; record keeping requirements; spread-of-hours pay; and every other violation that plaintiffs are alleging is fully redressable under the NYLL, and many of these are of not even actionable under the FLSA. In addition, the class action that plaintiffs are seeking is also under state law, not available under the FLSA, and the length of the statute of limitations is double or triple under state labor law as compared to that of the FLSA. Compare NYLL § 663(3) (six years) with 29 U.S.C. § 255(a) (two years for standard violations and three years for "willful" violations). In other words, if plaintiffs had sued in state court under the NYLL, they could have obtained all the relief that the FLSA offers and much other relief that it does not. A reasonable argument could be made I should decline supplemental jurisdiction of the NYLL claims here because they so completely eclipse the FLSA claims, but defendants have not asked this of me.

This shows that by using the FLSA as nothing more than a jurisdictional hook, and then attempting to attach state law discrimination claims, plaintiffs seek to construct a bridge too far. The FLSA claims here are of minimal if any importance beyond conferring federal jurisdiction. The bigger wage dispute (including the dollar amount of the minimum wage) and remedies arise under the NYLL – indeed, those NYLL claims practically form their own case. And having grafted the latter onto the former, plaintiffs then seek to bootstrap discrimination claims that have little or nothing to do with either, aside from painting defendants in a profoundly negative light.

For whatever reason, plaintiff sought to bring a case that could have provided them with full relief in state court – without the constraint of requiring an Article III case and controversy – in federal court. Plaintiffs were entitled to bring the wage case here, but they cannot expand the jurisdiction of the federal court to resolve unrelated disputes between the parties.

Finally, in attempt to distinguish the many district court cases that defendants have cited that decline to hear wage and discrimination claims together, see Turban v. Bar Giacosa Corp., No. 19-cv-1138, 2019 WL 3495947, at *4 (S.D.N.Y. Aug. 1, 2019); Kobeck v. Armonk Bristal LLC, No. 16-cv-8770, 2018 WL 1406623, at *2-3 (S.D.N.Y. March 19, 2018); Yahui Zhang v. Akami Inc., No. 15-cv-4946, 2017 WL 4329723, at *10 (S.D.N.Y. Sept. 26, 2017); Thomas v. EONY LLC, No. 13-cv-8512, 2015 WL 1809085, at *6-7 (S.D.N.Y. April 21, 2015), plaintiffs note that the Second Circuit has not weighed in on whether FLSA claims can be brought together with discrimination claims. That is hardly surprising, because the case or controversy test for the existence of supplemental jurisdiction must be applied on a case-by-case basis, dependent on the facts of each case. For example, a case could arise, albeit unlikely, that a manager could tell an employee that he will not pay her an overtime rate except in exchange for a sexual *quid pro quo*. There, the FLSA and sexual harassment claims would arise out of a common nucleus of operative fact. But that is not this case.

**II.      Plaintiffs' Motion for Partial Summary Judgment**

    **A. Unpaid training period**

Plaintiff Shibetti contends that at the beginning of her employment, she worked three separate shifts of eight hours per day as a "training period" for which she was not paid. Plaintiff Puccini contends that she worked one shift of four hours as her "training period" for which she was not paid.

Defendants concede that every new employee is required to undergo an unpaid training period. They further concede that this is impermissible under the FLSA and the NYLL.

8

Adel testified that the length of the training period varies, depending on the new employee's prior experience: "[I]f they have experience, they train one day, four hours, five hours." Defendants concede that Puccini was unpaid for her four hours, but Adel testified that Shibetti could not have had a three day training period because she was an experienced waitress.

Defendants maintain no records showing the length of each new employee's training period. Plaintiffs contend that as a result of this failure, they are permitted to testify as to their recollections of hours worked. Of course, that's true. See Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 336-37 (S.D.N.Y. 2005). If unopposed, plaintiffs' testimony would be conclusive. But as to Shibetti, Adel has identified an invariable policy and practice of not training new employees with prior experience for more than four or five hours, and based on that, did not accept the possibility that Shibetti could have trained for eight hours a day over three days.

It is a marginal issue of fact, one that I think defendants are likely to lose before a jury. Shibetti's recollection may well be a lot more convincing than that of an employer who maintains no records and has no personal knowledge to contradict plaintiff. But drawing every inference in favor of defendants, as I am required to do on this motion, it is for a jury to determine Shibetti's credibility or, in contrast, whether to credit Adel's description of a policy and further infer that it was applied to Shibetti.

That is not the case with Puccini. Her testimony is fully consistent with Adel's professed policy and defendants have offered no evidence to contradict her testimony. Summary judgment on this issue is therefore granted to Puccini and denied as to Shibetti.

9

### B. Notification and posting of rights and wages and tip credit

NYLL § 195 imposes various record keeping requirements on employers. For our purposes, the relevant portions require employers to give each employee, upon hiring, a wage notice that lists, *inter alia*, the employee's hourly rate of pay and any tip credit that the employer intends to apply to the minimum wage calculation for that employee. It further requires the employer to obtain the employee's signature that she has received this notice, and to maintain these acknowledgments for at least six years. Id. § 195(1)(a). Finally, § 195(3) requires that at the end of every pay period, the employer must provide a wage statement setting forth: (1) the pay period; (2) the name, address, and phone number of the employer; (3) the rate of pay and whether it is on an hourly or salaried basis; (5) the gross wages and the itemized deductions from gross wages, plus the net wages; and (6) a breakdown of hours and rates of pay into regular time and overtime periods.

As to the pre-employment notices, defendants concede they never obtained acknowledgements that plaintiffs had received such notices. Their excuse is that plaintiffs were given the notices but refused to acknowledge them. Assuming that's true, defendants have still not complied with the statute. Its plain language requires the employer to obtain acknowledgements and keep records showing the delivery of the notices: "Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgment, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years." NYLL § 195(1)(a). If a prospective employee refuses to sign the acknowledgement, the employer's response to ensure compliance is simple: don't hire the prospective employee.

10

As to the wage statements, defendants rely on the employees' timecards. The argument is specious, for the timecards contain nowhere near the amount of information that § 195(3) requires. Defendants are liable for not complying with the statute.

Section 198(1)(b) of the Labor Law contains the penalty provisions for violations of § 195. The penalties are $50 per day up to a maximum of $5000. Since there is no dispute that each plaintiff worked more than 100 days and never received written notice of their pay conditions, summary judgment is granted in favor of plaintiffs for $5000 each.

An employer who does not provide wage statements at every pay period under § 195(3) must pay $250 per work day, with total damages not to exceed $5000. There is no genuine dispute that plaintiffs worked more than 20 days and never received required wage statements. Summary judgment is therefore granted in favor of plaintiffs for $5000 each.

Finally, it is undisputed that defendants have no records showing plaintiffs' acknowledgment that they received notice of a "tip credit," i.e., a deduction from their pay to reflect tips they received, as part of their minimum wage. New York Labor Law requires an employer to maintain such records for six years. See 12 N.Y.C.R.R. § 146-2.2(c). Because defendants did not, no tip credit will be included when calculating plaintiffs' regular and overtime rates based on hours worked. See Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 254 (S.D.N.Y. 2008).

### C. Individual Liability of Adel and Adam for wage deficiencies

Under the FLSA, an "'employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The determination of whether an employer-employee relationship exists under FLSA is based on an "economic

11

reality" test, taking into account the totality of the circumstances. See Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013). Courts in the Second Circuit generally look to four non-exclusive factors to determine the "economic reality" of a putative employment relationship. These factors are whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. See Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008). The Second Circuit has emphasized that no set of factors is dispositive and courts must consider the totality of the circumstances to determine the economic reality of the employment relationship. Id. at 142-43.

An employer-employee relationship can still exist even if employee control is restricted or exercised only occasionally. Id. at 142 (citing Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)). And an employer need not necessarily have "direct control over the plaintiff employees"; "an individual's authority over management, supervision, and oversight of a company's affairs in general" may be sufficient. Irizarry, 722 F.3d at 110. But ownership of or a stake in a company alone is insufficient to establish that an individual is an "employer" without some further involvement. Id. at 111.

Defendants do not seriously contest Adel's liability under these principles. His 80% ownership and day-to-day management, including authority to hire and fire employees and set their work and compensation schedules, is obviously sufficient. Defendants do contest Adam's liability, and I cannot find that he satisfies the economic reality test as a matter of law. I have no evidence before me that he ever made a decision to hire anyone; that he ever set time plaintiffs' work schedules; or that he determined their wage rates. On the other hand, he is clearly involved

in hiring by referring applicants, states that he fired a Parkview employee "once or twice," and it does appear that he maintained at least some records during the operative period. In addition, although Adam's 20% ownership by itself is not sufficient by itself for individual liability, see Hernandez v. Habana Room, Inc., No. 11-cv-1264, 2012 WL 423355, at *3 (S.D.N.Y. Feb. 9, 2012), Adam acknowledged the practicalities of father-son ownership at his deposition – "I'm an owner, I'm authorized for everything." However, whether that is merely a self-aggrandizing statement by the son of the owner of the business or a statement of reality is best determined by a jury. Again, it is a marginal issue on which plaintiffs may be likely to prevail, but it is an issue of fact.

### III. Motion for leave to send out collective action notice

Section 216(b) of the FLSA creates a private right of action for employees to recover unpaid minimum wage and overtime compensation on behalf of themselves and similarly situated employees. Similarly situated employees must opt into the collective action by filing their written consent with the court before they may proceed as plaintiffs. See 29 U.S.C. § 216(b). Thus, district courts have discretion to facilitate a notice process by which potential plaintiffs are informed of an FLSA action that they might join to adjudicate their rights. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989).

Consistent with this discretion to facilitate notice, courts in the Second Circuit conduct a two-step process to determine whether to certify a collective action under the FLSA. See Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred." Id. (internal quotation marks and citations omitted). This step requires plaintiffs to "make a modest factual

showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." Id. (internal quotation marks and citations omitted). "[T]he focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Romero v. La Revise Assocs., L.L.C., 968 F. Supp. 2d 639, 645 (S.D.N.Y. 2013) (internal quotations marks and citations omitted).

"At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Myers, 624 F.3d at 555. "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Id. (citing cases).

Plaintiffs' instant motion concerns only the first stage of this process. "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." Puglisi v. TD Bank, N.A., 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014).

Here, plaintiffs propose to post and send an opt-in notice to waiters, waitresses, bus persons, hosts and hostesses, and other non-exempt tipped positions for the period 2015 through the present. This is not the first time plaintiffs have sought this relief in this action. Magistrate Judge Tiscione had recommended that Judge Korman deny the motion because plaintiffs failed to submit adequate proof that the members of the proposed collective were similarly situated.[7] The particular defect upon which Judge Tiscione relied was that the affidavit from each plaintiff

---

[7] Judge Korman summarily overruled defendants' objections and adopted Judge Tiscione's report and recommendation.

14

contained only conclusory allegations of similarity to other employees.  Specifically, the affidavit of each plaintiff averred: "During my employment, I observed the Parkview Diner treating other employees the same way, including not providing them with any paperwork or paychecks, and docking their pay for various reasons."  That kind of generalized reference to the alleged similar situations of other employees is precisely what many cases have held to be inadequate.  See Feng v. Hampshire Times, No. 14-cv-7102, 2015 WL 1061973, at *3 (S.D.N.Y. March 11, 2015) (denying certification where all seven affidavits contained one identical statement that the affiants were unaware of any other employees receiving overtime pay); Reyes v. Nidaja, LLC, No. 14-cv-9812, 2015 WL 4622587, at *1 (S.D.N.Y. Aug. 3, 2015) (denying certification motion premised only on a plaintiff's "bare assertion that other employees also worked overtime without compensation").  And, apparently, Judge Tiscione did not consider the fact that two plaintiffs had been treated similarly to be adequate to support notice to the proposed collective.

      With leave of court, plaintiffs have renewed their motion.  Defendants contend that it suffers from the same defect as the prior motion, and, indeed, the two plaintiffs' affidavits contain the same conclusory language that Judge Tiscione found inadequate.  However, there is more proof this time around.  In addition to plaintiffs' affidavits, two additional affidavits from other waitresses have been submitted that fully corroborate plaintiffs' affidavits with their own experiences.  We thus have four affidavits averring to the particular FLSA violations, each one based on personal knowledge.  And in addition to that, plaintiffs have submitted excerpts from defendants' depositions, which admit, among other things, that defendants have no record of providing tip credit notices which would be necessary to ensure compliance with the wage levels required under the FLSA, or of paying for training periods.

Although the case law frowns on generalized statements like "I believe other employees have been treated the same as me" as the basis of sending out notice to the collective, there are many cases that recognize that a plaintiff need make only a "modest showing" of a similar situation between the plaintiff and the other members of the proposed collective. See, e.g., Perez v. De Domenico Pizza & Restaurant, Inc., 204 F. Supp. 3d 494, 495-96 (E.D.N.Y. 2016); Kalloo v. Unlimited Mech. Co. of NY, 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2012). This includes allowance of hearsay statements from other employees in the plaintiff's affidavit. See Gui Zhen Zhu v. Matsu Corp, 424 F. Supp. 3d 253, 264 (D. Conn. 2020); Ramos v. Platt, No. 13-cv-8957, 2014 WL 3639194, at *2 (S.D.N.Y. July 23, 2014); Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 59 (E.D.N.Y. 2011). Thus, there is a crucial difference between a plaintiff averring that "I have spoken to other employees and they tell me they are treated the same," as opposed to, "I have spoken to [e.g.] Jane Alexander, Joan Smith, and each of them has also told me that they received no tip credit notice and worked an unpaid training period." The former, as Judge Tiscione recognized, is not adequate, but the latter probably is. See Hernandez v. Bare Burger Dio Inc., No. 12-cv-7794, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013).

We are closer to the second scenario than the first. Indeed, we have more evidence of similarly situated employees than the second scenario. If plaintiff Shibetti had submitted an affidavit saying: "I have spoken with co-plaintiff Kathleen Puccini, and two other waitresses, Kathy Camacho and Linda Nicoletti, and each one has told me that they received no training period pay and no tip credit notices," that would undoubtedly be adequate to warrant sending out notice to the collective. See Zaldivar v. JMJ Caterers, Inc., 166 F. Supp. 3d 310, 320-21 (E.D.N.Y. 2016) (approving conditional certification based on the plaintiff's affidavit stating that he was never paid overtime and that three co-workers had told him the same thing). We have

16

even better evidence, because we have firsthand knowledge, not hearsay, from four similarly situated employees. When you add to that defendants' admissions that they have no record of giving a tip credit notice to any of their tipped employees and that they never pay for training time, the appropriateness of treating this case as a collective action, at least for the initial step of sending out notice, is self-evident.

Plaintiffs seek a list of names, last known addresses, telephone numbers, and e-mail addresses of workers employed by defendants at any time between September 2015 through the present at the Parkview Diner. Plaintiffs' motion is granted to the extent necessary to facilitate providing notice by first-clas mail and e-mail to viable members of the collective, except that the time period involved shall be three years prior to the date of this Order. See Rotari v. Mitoushi Sushi, Inc., No. 19-cv-5182, 2020 WL 1289589, at *7 (E.D.N.Y. March 18, 2020).[8] The Court orders defendants, within 14 days of this order, to provide plaintiffs a computer-readable list of full names, addresses, and e-mail addresses for all persons employed by defendants at the Parkview Diner as waiters, waitresses, bus persons, hosts, and hostesses, or in other non-exempt tipped positions.

Plaintiffs further request to post a notice, along with consent forms, in a conspicuous location at Parkview. "Posting notice in the workplace maximize potential Plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in."

---

[8] There is no reason to go beyond three years. In an FLSA collective action, "the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit." Garriga v. Blonder Builders Inc., No. 17-cv-497, 2018 WL 4861394, at *10 (E.D.N.Y. Sept. 28, 2018). The statute of limitations is not tolled upon the filing of the complaint, as it is in a class action, and opt-in plaintiffs' consent forms do not relate back to the filing of the complaint. As a result, "[i]f the limitations period is not so tolled, opt-in plaintiffs would not be able to make claims for any period prior to three years from the date they actually filed a consent to join the action." Contrera v. Langer, 278 F. Supp. 3d 702, 722-723 (S.D.N.Y. 2017) (citing 29 U.S.C. § 256(b)). There is no basis to toll the statute of limitations in a regular, run-of-the-mill FLSA collective action. See Rotari, 2020 WL 1289589, at *5.

17

Gui Guo Qing Wang v. H.B. Rest. Grp., Inc., No. 14-cv-813, 2014 WL 5055813, at *6 (S.D.N.Y. Oct. 7, 2014). Accordingly, "[c]ourts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." Id. (citation omitted). I therefore adopt plaintiffs' proposed notice and it shall be posted at the Parkview Diner, along with sufficient consent forms, in a conspicuous location within 7 days of this order.[9]

## CONCLUSION

Plaintiffs' [169] motion for conditional certification as an FLSA action, and for court-authorized notice, is granted in part, in accordance with the guidelines set forth above.

Within 7 days of this order, defendants shall post the notice, along with sufficient consent forms, in a conspicuous location at the Parkview location.

Furthermore, defendants are directed to disclose to plaintiffs, within 14 days of this order, a computer-readable list of full names, addresses, and e-mail addresses of its current and former employees as set forth above. Plaintiffs who wish to participate in this FLSA collective action must opt in by October 21, 2020.

Plaintiffs' motion for partial summary judgment [168] is granted in part and denied in part. Defendants' [185] motion to dismiss Counts VIII through XIII for lack of supplemental jurisdiction is granted.

---

[9] The notice must omit any reference to the claims that the Court has dismissed. Specifically, in page 2 of plaintiffs' proposed notice, there is reference to a "subclass of female persons … alleging discrimination, retaliation, and hostile work environment claims against defendants under the New York City Human Rights Law." .

18

In light of the disposition of the other motions in this Order, the class certification motion is denied without prejudice [170] to renewal consistent with the rulings in this Order within 14 days after the opt-in period has expired.

**SO ORDERED.**

                                                                                        _____
                                                                                                        U.S.D.J.

Dated: Brooklyn, New York
           August 7, 2020