UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                                :

BONNIE SHIBETTI and KATRINA
PUCCINI, individually and on behalf of all
others similarly situated,

                        Plaintiffs,      **MEMORANDUM DECISION
                                           AND ORDER**

               - against -

                                           18-cv-856 (BMC)

Z RESTAURANT, DINER AND LOUNGE,
INC.; ADEL FATHELBAB; ADAM
FATHELBAB; KAMAL FATHELBAB;
ESSAM ELBASSIONY; MIKO
ENTERPRISES, LLC; MICHAEL
SIDERAKIS; CHRISTOS SIDERAKIS;
KONSTANTINOS SIKLAS; CROWN
CROPSEY AVENUE LLC; LGMALONEY
LLC; XYZ CORP(S) 1–5; and JOHN
DOE(S) 1–5;

                        Defendants.

----------------------------------------------------------- X

**COGAN**, District Judge.

       In this action under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), certain defendants have moved for sanctions. The Court has already entered an order granting conditional approval to proceed with a collective action and authorizing court-facilitated notice under the FLSA. See 29 U.S.C. § 216(b). According to the moving defendants, plaintiffs' counsel violated both that order and the New York State Rules of Professional Conduct by calling potential plaintiffs and sending them "cover letters" alongside the court-authorized notice and consent forms. Plaintiffs insist that these actions were not only

permissible, but also necessary, as defendants failed to produce complete contact information for their employees. Plaintiffs have thus moved for an extension of the opt-in period.[1]

Regardless of defendants' alleged failures, plaintiffs' counsel impermissibly took matters into their own hands. Specifically, plaintiffs' counsel violated the ethical rules that apply in this district by soliciting potential plaintiffs by telephone. Defendants' motion for sanctions is granted, and plaintiffs' motion for an extension of the opt-in period is denied.

## BACKGROUND

### I.     The Motions to Compel

For a case of its kind, this case has a long and acrimonious procedural history. The plaintiffs, Bonnie Shibetti and Katrina Puccini, worked as waitresses at the Parkview Diner in Brooklyn. They allege that the diner and its owners – the moving defendants – failed to pay the minimum wage, never paid overtime, and ran afoul of several other state laws. Based on these allegations, plaintiffs sought a collective action for their federal claims and a class action for their state-law claims.

Early on in the litigation, Magistrate Judge Tiscione granted plaintiffs' motion to compel, requiring defendants to produce the "full names, positions, dates of employment and telephone number/emails of hourly tipped employees." Defendants produced a spreadsheet that listed 51 employees. Only 28 of the entries had full names. Only 21 had telephone numbers. None had any positions, dates of employment, or emails.

Plaintiffs filed another motion to compel. In opposing that motion, defendants produced a revised spreadsheet. It covered 73 employees, listing every person's position, start date, and

---

[1] Only defendants Essam Elbassiony and Adel, Adam, and Kamal Fathelbab have moved for sanctions. For clarity, I will refer to them simply as "defendants."

end date. Only 31 of the entries had last names. None had addresses. At a hearing, defendants represented that they lacked this missing information.

Although Judge Tiscione accepted this representation, he still ordered defendants to supplement their production. Specifically, the first production had covered only employees in the previous four years, but Judge Tiscione ordered that it cover the previous five years, starting from the date defendants took ownership of the diner. On the deadline to supplement their production, defendants sent an email stating that they were "unable to locate any additional information relative to the names and contact information for their tipped employees."

Several months later, plaintiffs filed a third motion to compel. Judge Tiscione ordered defendants to "produce the names and addresses for any former employees for which they have not already provided telephone numbers and/or email addresses." Soon after, the case was reassigned to me.

## II. The Collective Action Motions

Around this same time, plaintiffs had moved for conditional approval to proceed with a collective action. Judge Tiscione recommended denying the motion without prejudice, and I adopted his report and recommendation. See Shibetti v. Z Rest., Diner & Lounge, Inc., 2019 WL 11623937, at *1 (E.D.N.Y. Sept. 3, 2019), report and recommendation adopted by ECF Order, (E.D.N.Y. Jan. 6, 2020). In doing so, I reiterated my view that discovery is unnecessary for conditional approval. "[T]he alleged failure of defendants in this case to provide discovery is a red herring," I explained. "If defendants have failed to maintain records required by law or have engaged in dilatory discovery or spoliation, defendants will not escape the severe consequences, but those consequences do not bear on the required minimal showing that plaintiffs had to, but did not, make."

Nevertheless, plaintiffs eventually prevailed. In an order dated August 7, 2020 (the "Order"), I granted conditional approval to proceed with a collective action, with the collective consisting of all employees who worked in non-exempt tipped positions at the diner. See Shibetti v. Z Rest., Diner & Lounge, Inc., 478 F. Supp. 3d 403, 414–15 (E.D.N.Y. 2020). I also authorized court-facilitated notice under the FLSA. Specifically, the Order required defendants to produce "a computer-readable list of full names, addresses, and e-mail addresses" – but not telephone numbers – "for all persons employed by defendants at the Parkview Diner as waiters, waitresses, bus persons, hosts, and hostesses, or in other non-exempt tipped positions" during the previous three years. Id. at 416. The Order did not address reminder notices.

In response to the Order, defendants produced a spreadsheet listing 72 employees. This time, defendants listed most of the full names, positions, addresses, start dates, and end dates. As plaintiffs stress, however, the entries for six employees lacked last names, and eleven lacked addresses. Many more lacked apartment numbers, but it is not clear whether defendants failed to provide this information or whether each address itself simply lacks an apartment number. The spreadsheet did not list any email addresses.

When moving for conditional approval, plaintiffs had also moved for class certification of their state-law claims. The Order denied that motion without prejudice to renewal, but plaintiffs did not file a renewed motion under Rule 23. However, three other employees have since opted in to the collective action.

### III. The Instant Motions

Defendants then brought this motion for sanctions. In a declaration, the Secretary of the Parkview Diner, defendant Adam Fathelbab, reports that a server shared a voicemail from plaintiffs' counsel. It stated:

4

> Yes, hi.  This message is for [the server].  My name is Jared Blumetti.  I'm calling on behalf of waiters and waitresses of the [Parkview Diner].  A few weeks ago I sent you a notice regarding your ability to potentially opt into this lawsuit against the [Parkview Diner] regarding not being paid certain wages.  If you can give me a call back or if you have any interest in joining this lawsuit, my number is [phone number].  Thank you.

Fathelbab then declares that two other servers had given him letters they received from plaintiffs' counsel.  Each letter stated:

> Dear [Server]:
>
> We represent Bonnie Shibetti and Katrina Puccini in a lawsuit that they filed against the owners and managers of the Parkview Diner located at 2939 Cropsey Avenue in Brooklyn, New York.  Ms. Shibetti and Ms. Puccini are former waitresses at the Parkview Diner who are alleging that the Parkview Diner failed to properly compensate them during their employment.  For instance, their claims include that the Parkview Diner failed to pay them wages during their training periods in violation of federal and state law.
>
> You are receiving this letter because you worked at the Parkview Diner at some point between August 2017 and the present and might be entitled to join the lawsuit.  For additional information about the lawsuit, including how to join the lawsuit, see the enclosed court-authorized notice and consent to sue form.
>
> If you have any questions, please contact the undersigned attorneys at [phone number].
>
> /s/
>
> Patrick McPartland
>
> Jared E. Blumetti

These letters accompanied the court-authorized notice and consent forms.

Plaintiffs acknowledge that their counsel was behind these actions.  Yet plaintiffs insist that it was not their counsel – but defense counsel – who violated court orders.  Plaintiffs point to both the Order granting court-facilitated notice and Judge Tiscione's earlier orders granting their motions to compel.  They claim that defendants "flouted" these orders by repeatedly failing to provide complete contact information.  The latest spreadsheet, plaintiffs explain, contained new contact information for previously disclosed employees, which suggests that defendants

knowingly withheld that information in earlier productions. Also, some of the information was inaccurate, so when plaintiffs sent the notice and consent forms, nearly a quarter were returned as "undeliverable."

At that point, one of plaintiffs' attorneys called 12 potential plaintiffs "for the limited purpose of determining whether they had received the notice." The attorney spoke with four potential plaintiffs and left a voicemail with the remaining eight. For each call, the attorney claims to have "introduced [himself,] referenced the notice that was sent to [the potential plaintiffs,] and *asked them whether they had any interest in joining the lawsuit.*" (Emphasis added). In counsel's view, these calls "conveyed, in sum and substance, the same exact information that [was] contained on the notice."

Plaintiffs' counsel also acknowledges that they sent the letters. They brand these mailings as "cover letters" to the court-authorized notice and consent forms. Counsel first sent the letters along with the notice and consent forms, but they soon realized that they "inadvertently failed to include self-addressed stamped envelopes in these initial mailings." So three days letter, counsel sent those envelopes along with a second copy of the cover letter, notice, and consent forms.

Defendants maintain that these communications violated both the Order and the New York State Rules of Professional Conduct. As a remedy, defendants request an order (1) prohibiting plaintiffs' counsel from contacting any potential opt-in plaintiffs without court approval; (2) prohibiting plaintiffs' counsel from collecting fees or costs for work performed on the two pending motions; (3) awarding fees and costs for the work defense counsel performed on those motions; (4) preventing plaintiffs' counsel from collecting fees or costs for work performed for anyone other than the plaintiffs who had opted in as of October 21, 2020; and

6

(5) conditioning any award of fees and costs for work performed for the existing opt-in plaintiffs on "proof that [they] were not solicited over the telephone by plaintiffs' counsel."

In plaintiffs' view, however, the Court should sanction defendants' conduct. Plaintiffs argue that defendants intentionally withheld information when responding to court orders. Thus, say plaintiffs, the Court should deny defendants' motion, order defendants to produce a certified version of the employees' contact information, and extend the opt-in period for 30 days.

## DISCUSSION

### I. The Court's Supervisory Authority Over Class Actions and Collective Actions

In a class action, "a district court has both the duty and the broad authority to exercise control over [the] class action and to enter appropriate orders governing the conduct of counsel and parties." Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981). This authority "exists even before a class is certified." O'Conner v. Agilant Sols., Inc., 444 F. Supp. 3d 593, 601 (S.D.N.Y. 2020) (quotation omitted). The authority also allows the court to "limit communications by plaintiffs, defendants, or both." Zamboni v. Pepe W. 48th St. LLC, No. 12-cv-3157, 2013 WL 978935, at *2 (S.D.N.Y. March 12, 2013).

But the authority is not unfettered. In Gulf Oil Co. v. Bernard, the Supreme Court set forth a clear standard for limiting communications with potential class members in a putative class action:

> [A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23. In addition, such a weighing – identifying the potential abuses being addressed – should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

452 U.S. at 101–02 (footnotes omitted). Under this standard, "the mere possibility of abuses does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the Rules." Id. at 104.[2]

Although Gulf Oil concerned a putative class action, the Supreme Court has stated that the "same justifications" for a court's "broad authority to exercise control" also apply to collective actions. Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 171 (1989) (citing Gulf Oil, 452 U.S. at 101). Lower courts have since concluded that the similar authority comes with similar restrictions. Specifically, courts in this Circuit have stated that "[t]he same principles that govern communications with putative class members in a class action under Rule 23 also apply to communications with potential opt-in plaintiffs in a collective action brought under the FLSA." Zamboni, 2013 WL 978935, at *2.

At least at the initial stages, this parallel standard reflects the parallel attorney-client relationships in the two contexts. In a putative class action, plaintiffs' counsel lacks an attorney-client relationship with potential class members. See Chen-Oster v. Goldman, Sachs & Co., No. 10-cv-6950, 2018 WL 3869886, at *3 (S.D.N.Y. July 24, 2018) (noting that "[t]he majority of courts recognize that an attorney-client relationship with class counsel arises at the time the class is certified"). In a collective action, plaintiffs' counsel also lacks an attorney-client relationship with potential plaintiffs, regardless of whether the court has granted conditional approval to proceed with a collective action. See Scott v. Chipotle Mexican Grill, Inc., No. 12-cv-08333, 2014 WL 4852063, at *3 (S.D.N.Y. Sept. 29, 2014) (noting that the attorney-client

---

[2] Applying this standard, the Supreme Court held that a district court abused its discretion when, prior to class certification, it "imposed a complete ban on all communications concerning the class action between parties or their counsel and any actual or potential class member who was not a formal party, without the prior approval of the court." Gulf Oil, 452 U.S. at 94–95, 104; see also Bernard v. Gulf Oil Co., 619 F.2d 459, 475 n.29 (5th Cir. 1980) (en banc) (noting that the district court never certified a class).

relationship arises only if the plaintiff has opted in). Because plaintiffs' counsel is communicating with unrepresented individuals in both contexts, it makes sense to apply the same principles governing communications. Thus, while a court can "enter appropriate orders governing the conduct of counsel" in a collective action, Hoffmann-La Roche, 493 U.S. at 170, an order restricting communications must still rest on "a clear record and specific findings that reflect a weighing of the need for a limitation," O'Conner, 444 F. Supp. 3d at 606 (quoting Gulf Oil, 452 U.S. at 101).[3]

## II.     The Phone Calls

If proven, unethical conduct can "justify restricting further use of the contact information beyond that of completing the notice phase" in a collective action. Gordon v. Kaleida Health, 737 F. Supp. 2d 91, 97 (W.D.N.Y. 2010); see also O'Conner, 444 F. Supp. 3d at 602 n.5 (noting that courts have "authority to remedy ethical violations" in the collective action context). This Court generally looks to the New York State Rules of Professional Conduct to determine the scope of ethical conduct. See Local Civil Rule 1.5(b)(5). Those rules bar the solicitation of

---

[3] To be sure, there are still important differences between collective actions and class actions. These differences often depend on the stage of the case. The two contexts are most closely aligned prior to certification of a class action and conditional approval to proceed as a collective action. Indeed, many cases begin as both putative class actions and collective actions. It is in this context that district courts often apply Gulf Oil to collective actions. See, e.g., Mendez v. Enecon Ne. Applied Polymer Sys., Inc., No. 14-cv-6736, 2015 WL 4249219, at *2–3 (E.D.N.Y. July 13, 2015).

After conditional approval to proceed as a collective action, but before certification of a class action, plaintiffs' counsel still lacks an attorney-client relationship with potential plaintiffs. Accordingly, many courts continue to apply Gulf Oil. See, e.g., O'Conner, 444 F. Supp. 3d at 606. As we shall see, however, the grant of conditional approval does give a court a heightened interest in monitoring communications that does not exist prior to conditional approval.

Once a court certifies a class action, the two contexts truly diverge. In a certified class action, class members "must opt out if they do not want to be included in the class," whereas would-be plaintiffs in an FLSA collective action must always opt in. Chen-Oster, 2018 WL 3869886, at *3. The corollary is that, in a class action, class counsel has an attorney-client relationship with all class members once the class is certified, id., but counsel always lacks that relationship with potential plaintiffs in a collective action, Scott, 2014 WL 4852063, at *3. Given these differences, the extent to which collective actions can inform class actions at this stage remains "debatable," Chen-Oster, 2018 WL 3869886, at *3, especially when it comes to ethical issues.

9

business in person or by telephone. See N.Y. R. Prof. Conduct 7.3(a)(1). They define "solicitation" as follows:

> "[S]olicitation" means any advertisement initiated by or on behalf of a lawyer or law firm that is directed to, or targeted at, a specific recipient or group of recipients, or their family members or legal representatives, the primary purpose of which is the retention of the lawyer or law firm, and a significant motive for which is pecuniary gain.

N.Y. R. Prof. Conduct 7.3(b). Here, an attorney called specific individuals, asking them to "give [him] a call back" if they had "any interest in joining this lawsuit." That was a solicitation. See id.; cf. Maracich v. Spears, 570 U.S. 48, 55 (2013) (describing letters "asking [individuals] to join the lawsuits" as "solicitation letters"); Hamm v. TBC Corp., 597 F. Supp. 2d 1338, 1351 (S.D. Fla.) (holding that plaintiffs' counsel engaged in solicitation under the Florida ethical rules when, prior to conditional approval to proceed with a collective action under the FLSA, counsel's administrative assistant called potential plaintiffs to inquire whether they would like to join the lawsuit), aff'd, 345 F. App'x 406 (11th Cir. 2009).

"The solicitation of business by a lawyer through direct, in-person communication with the prospective client has long been viewed as inconsistent with the profession's ideal of the attorney-client relationship and as posing a significant potential for harm to the prospective client." Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 454 (1978). The Supreme Court has repeatedly disapproved of this form of communication, even as it has expanded the First Amendment protections for attorney advertising. See Shapero v. Ky. Bar Ass'n, 486 U.S. 466, 475 (1988) (distinguishing targeted, direct-mail solicitation). "[T]he mode of communication makes all the difference," id., and telephone and in-person solicitation are "rife with possibilities for overreaching, invasion of privacy, the exercise of undue influence, and outright fraud," id. (quoting Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio, 471 U.S. 626, 641 (1985)).

10

The collective action context does not change the ethical analysis. For starters, "[c]ourt intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims." Hoffmann-La Roche, 493 U.S. at 174. And the Supreme Court has specifically cautioned that "potential abuses associated with communications to class members" include the "heightened susceptibilities of nonparty class members to solicitation amounting to barratry as well as the increased opportunities of the parties or counsel to 'drum up' participation in the proceeding." Gulf Oil, 452 U.S. at 101 n.12 (quotation omitted). Therefore, neither the FLSA nor the relevant precedent carves out an exception to the ethical rules.

Nor do the rules carve out an exception for collective actions. In New York, Rule 7.3(a)(1) prohibits solicitation "by in-person or telephone contact . . . unless the recipient is a close friend, relative, former client or existing client." This Rule 7.3 tracks the ABA's Model Rule 7.3, which the ABA has interpreted to prohibit in-person and telephone solicitation of potential class members. See ABA Formal Op. 07-445 (2007). Thus, "[t]he fact that an action has been filed as a class action" – or as a collective action – "does not affect the policies underlying Rule 7.3 that prohibit the types of contact with prospective clients that have serious potential for overreaching and other abuse." Id.; see also Mendez, 2015 WL 4249219, at *3 (applying Formal Opinion 07-445 in an FLSA collective action).

That rule controls this case. There is no factual dispute, for plaintiffs' counsel acknowledges that they made the calls. Counsel instead relies on unconvincing excuses. Counsel first claim that they "had a valid reason" to call potential plaintiffs, given defendants' failure to provide complete contact information. Yet counsel cites no authority for this argument that two wrongs make a right.

11

Counsel thus retreats to a position that the calls were "wholly proper" because counsel "generally" has a right to contact potential plaintiffs. To be sure, the Supreme Court, the American Bar Association, and several courts in this Circuit have concluded that both plaintiffs' counsel and defense counsel "have legitimate need to reach out" to potential plaintiffs in certain situations. ABA Formal Op. 07-445; see also Gulf Oil, 452 U.S. at 101–02; Brown v. Mustang Sally's Spirits & Grill, Inc., No. 12-cv-529, 2012 WL 4764585, at *2 (W.D.N.Y. Oct. 5, 2012). This need may include "obtain[ing] information about the merits of the case," Gulf Oil, 452 U.S. at 101, or uncovering "information that may be relevant to whether or not a class should be certified," ABA Formal Op. 07-445. But the fact that counsel can contact individuals for *some* purposes does not mean that counsel can contact them for *any* purpose. Direct solicitation by telephone is not a permissible purpose. Therefore, the actions of plaintiffs' counsel warrant sanctions.[4]

## III. The Letters

Although solicitation by telephone is unethical both before and after conditional approval to proceed with a collective action, the propriety of sending letters often depends on the stage of the case. Before conditional approval, courts are reluctant to regulate letters to potential plaintiffs, reasoning that these letters are protected by Gulf Oil and the First Amendment. See

---

[4] Although I agree with defendants that the calls violated the applicable ethical rules, I conclude that the calls did not violate the Order granting conditional approval to proceed with a collective action. Tellingly, defendants fail to specify what provision of the Order the calls violated. The Order merely authorized certain methods by which plaintiffs' counsel could contact potential opt-in plaintiffs, but it did not state that those methods were the only ones that plaintiffs' counsel could use. See Gordon, 737 F. Supp. 2d at 101 (holding that a conditional approval order did not bar all forms of communication with potential plaintiffs where it "provided no express limitation on the further use of contact information"). To interpret the Order to prohibit *all* forms of communication would likely violate the Supreme Court's holding in Gulf Oil. See Gulf Oil, 452 U.S. at 104 (holding that a complete ban was an abuse of discretion); see also Hinterberger v. Cath. Health Sys., Inc., No. 08-cv-380S, 2010 WL 3395672, at *7 (W.D.N.Y. May 13, 2010) (reasoning that interpreting a conditional approval order to bar all communication "would effectively open [the order] to serious constitutional challenge"); Fengler v. Crouse Health Sys., Inc., 634 F. Supp. 2d 257, 262 (N.D.N.Y. 2009) (holding that a magistrate judge's order with a blanket prohibition on communication between parties, counsel, and potential opt-in plaintiffs was contrary to law).

12

Gordon, 737 F. Supp. 2d at 99; Hinterberger, 2010 WL 3395672, at *7; cf. Shapero, 486 U.S. at 472 (holding that targeted, direct-mail solicitation is commercial speech). At this stage, courts typically require a showing that letters are false, misleading, coercive, or otherwise unprotected. See Mendez, 2015 WL 4249219, at *2 (denying the defendants' motion to send a curative letter); Chowdury v. Peter Luger, Inc., No. 14-cv-5880, ECF No. 30 (E.D.N.Y. May 22, 2015) (same).

Once the court grants conditional approval to proceed with a collective action, however, the analysis becomes more complicated. See Howard v. Securitas Sec. Servs., USA Inc., 630 F. Supp. 2d 905, 908 (N.D. Ill. 2009). At this stage, the court "tak[es] the reins of the notice process" and "set[s] all of the parameters of that process." Ruggles v. WellPoint, Inc., 591 F. Supp. 2d 150, 164 (N.D.N.Y. 2008). That role gives the court a "substantial" interest in "preventing undue confusion among putative members of class or FLSA collective actions" during the notice phase. Hinterberger, 2010 WL 3395672, at *8.

With this greater interest comes greater discretion. See Ruggles, 591 F. Supp. 2d at 164. And with greater discretion comes greater variation among results. Even after facilitating notice, many courts still require a showing of abusive conduct. See Zamboni, 2013 WL 978935, at *3; Gordon, 737 F. Supp. 2d at 97; Hinterberger, 2010 WL 3395672, at *5. On this view, "[e]xamples of abusive conduct . . . that may be subject to judicial remedies include providing false, misleading or intimidating information, or other misconduct such as concealing material information or conducting communications with a represented party." Hinterberger, 2010 WL 3395672, at *5; see also Zamboni, 2013 WL 978935, at *3–4 (requiring curative notice and extending the opt-in period because the defendants solicited statements from employees that they did not have claims for unpaid wages).

Other courts have expressed a "discretionary preference for judicial supervision of proposed post-notice communications." Hinterberger, 2010 WL 3395672, at *10 (describing Taylor v. Pittsburgh Mercy Health Sys., Inc., No. 09-cv-377, 2009 WL 3769409, at *2 (W.D. Pa. Nov. 10, 2009), and Camesi v. Univ. of Pittsburgh Med. Ctr., No. 09-cv-85, 2009 WL 3719483, at *2 (W.D. Pa. Nov. 4, 2009)). This preference reflects a view that, "to bring order and efficiency to the notice process, the court-controlled mechanism should trump any attorney driven notice and resolve any post-conditional certification notice in favor of the Court's controlled process." Ruggles, 591 F. Supp. 2d at 164.

I take the latter view. Although I recognize the "considerable latitude afforded to [p]laintiffs" under the relevant standards, I must also remember that, without court supervision, mailings during the court-facilitated notice process "may well present a situation in which it is difficult, if not impossible, to 'unscramble the egg.'" Taylor v. Pittsburgh Mercy Health Sys., Inc., No. 09-cv-377, 2009 WL 2762531, at *4 (W.D. Pa. Aug. 25, 2009). "Failure to limit notification to a single process would be dissonant with the intent of the FLSA statute that the Court play a significant role in prescribing the terms and conditions of communications from the named plaintiffs to the potential members of the class on whose behalf the collective action was commenced." Ruggles, 591 F. Supp. 2d at 164. As I explained in a different case:

> There is often an unspoken but well understood conflict in FLSA actions: plaintiffs (or rather their counsel) want a large collective to increase potential damages and attorney's fees, and defendants want the collective and their potential liability to be as small as possible. Court-facilitated notice helps to balance these competing interests. The disputes over such notices can be quite petty, but Court approval "ensures that the notice is timely, accurate, and informative," and "both the parties and the court benefit from settling disputes about the content of the notice before it is distributed." Hoffmann-La Roche[, 493 U.S. at 172]. Those benefits are eviscerated if plaintiff's counsel does not fully disclose its plans for the notice or sends a notice that deviates from the version approved by the Court.

14

Panora v. Deenora Corp., No. 19-cv-7267, 2021 WL 736414, at *2 (E.D.N.Y. Feb. 25, 2021) (alterations adopted); see also Forauer v. Vt. Country Store, Inc., No. 5:12-cv-276, 2013 WL 6086202, at *6 (D. Vt. Nov. 19, 2013) (ordering after conditional approval that the "parties must refrain from any statement to potential class members or existing class members that the court has ruled on the merits of the lawsuit or otherwise endorsed the parties' positions"). During the notice phase, therefore, a district court can – and should – assume a greater role in supervising communications with potential plaintiffs.

But that does not mean that sanctions are warranted in this case. Unlike the cases cited above, this one does not involve a *prospective* order that would require plaintiffs' counsel to cease advertisements to potential plaintiffs, Ruggles, 591 F. Supp. 2d at 164, to remove notice from their website, id., or to "identify any contemplated additional mailings before they are sent," Taylor, 2009 WL 2762531, at *4. Instead, I must decide whether to impose sanctions for *past* conduct.

I must therefore consider that the propriety of sending additional mailings to potential plaintiffs during the notice period remains something of a grey area. See Howard, 630 F. Supp. 2d at 908 (noting the relative lack of precedent in this area). To further complicate matters, defendants did not move for a protective order when opposing the motion for conditional approval to proceed with a collective action, and the Order granting that motion did not expressly prohibit sending letters to potential plaintiffs. In these circumstances, imposing sanctions *solely* for mailing the letters would not be fair.

The letters' content does not support sanctions, either. Although the cover letters were unnecessary, they remain fairly innocuous. Unlike other communications that have resulted in sanctions, these letters conveyed the same information as the court-approved notice, and the

phrasing was not misleading or coercive. See Panora, 2021 WL 736414, at *2 (imposing sanctions where counsel edited the notice without court approval). Additionally, the letters did not ask the recipients to join the lawsuit, in stark contrast to the phone calls. In these circumstances, the content of the letters did not warrant sanctions.

That leaves the fact that plaintiffs' counsel sent the notice twice. This action did violate the Order. In authorizing the initial notice, the Order implicitly limited counsel to sending the notice only once – that is why plaintiffs frequently request permission to send reminder notices. See, e.g., Abdulzalieva, 2021 WL 1648024, at *4. If counsel needed to send the self-addressed stamped envelopes, the second mailing should have contained only those envelopes and a short letter explaining the oversight.

Despite this violation, two considerations militate against sanctions. First, any harm was minimal. The second mailing did not, as a practical matter, function as an unapproved reminder notice, as counsel sent the letters only three days apart. Second, I am already imposing sanctions for the telephone solicitations. That offense is far more serious, and to the extent the letters might warrant some form of sanctions in other circumstances, they do not justify imposing an *additional* sanction above and beyond what counsel is already going to receive. In these limited circumstances, I conclude that the unauthorized letters do not warrant additional sanctions.

## IV. The Sanctions

Because of the unethical telephone solicitations, defendants' motion for sanctions is granted. Plaintiffs' counsel is sanctioned in the amount of $1,000, payable to the Clerk of Court within 14 days with proof of payment filed on the docket in this action. At this point, however, I will not require plaintiffs' counsel to prove that the opt-in plaintiffs did not join the lawsuit because of telephone solicitations. Instead, I will reserve judgment on this issue until I am called upon to award attorneys' fees and costs, provided that I am called to do so at all. If plaintiffs do

eventually prevail, they shall not collect attorneys' fees or costs for the work done on the two motions before me, and I reserve judgment on whether to reduce plaintiffs' fee awards by an additional amount based on the conduct at issue.

Although defendants also requested that plaintiffs' counsel not collect any fees or costs for any work performed for any plaintiffs other than the ones who had opted in as of October 21, 2020, that request is moot. No one opted in after that date, and the opt-in period is now closed. For that same reason, there are no longer any opt-in plaintiffs to prohibit counsel from contacting.[5]

Further, I will not award defense counsel attorneys' fees for their work on either of these motions. Although plaintiffs' counsel acted unethically, defense counsel is not without blame. At various points in this litigation, the Court ordered defendants to produce their employees' contact information, yet defendants produced incomplete lists. They represented to both plaintiffs' counsel and the Court that they had produced the information to the full extent of their knowledge. Yet each time, defendants somehow produced more.

Defendants have not provided a satisfactory explanation. They first offer conclusory assertions that each production "was the most current information that was available." Yet defendants do not explain why the information that is now available was not available before. Defendants then resort to diversion, complaining that potential plaintiffs have already received an "inordinate amount of notice" and any additional notice "borders on harassment." But this

---

[5] Because I am not imposing a prior restraint on communications with potential plaintiffs, this case does not fall squarely within the Supreme Court's holding in Gulf Oil. To the extent the standard the Court announced could be deemed to govern sanctions for past communications, as opposed to restrictions on future communications, I find that the need for an order sanctioning the communications between plaintiffs' counsel and potential class members outweighs the interference with the rights of the parties. See 452 U.S. at 101–02. Defendants have identified specific abuses – the phone solicitations – and plaintiffs' counsel admitted that they were behind these actions. Defendants have also identified the specific dangers, namely, the inherent possibility of "overreaching, invasion of privacy, the exercise of undue influence, and outright fraud" that accompany any direct telephone solicitation. Shapero, 486 U.S. at 475 (quotation omitted).

Court's Order has already determined the appropriate amount of notice, and to the extent that plaintiffs' counsel exceeded its scope, that action justifies only sanctions. It did not give defendants license to ignore the Order as well. In these circumstances, defendants should not receive attorneys' fees.

Finally, plaintiffs' motion to extend the opt-in period is denied. If plaintiffs believed that defendants' productions did not comply with this Court's orders, the proper course of action was to notify the Court and to move for sanctions. Plaintiffs had ample opportunity to do so, and the Court made that clear. For example, at the hearing on plaintiffs' second motion to compel, plaintiffs' counsel suggested that defense counsel had withheld employee contact information, and Judge Tiscione responded: "To the extent that you think it's inaccurate or incomplete, that's where you can follow-up." Then, in the order adopting Judge Tiscione's report and recommendation, I cautioned that defendants "will not escape the severe consequences" if they "engaged in dilatory discovery or spoliation." Despite these warnings, plaintiffs did not bring defendants' most recent failure to the Court's attention until defendants had moved for sanctions. By then, it was too late, as plaintiffs' counsel had impermissibly taken matters into their own hands.

## CONCLUSION

Defendants' motion for sanctions [208] is granted as set forth above. Plaintiffs' motion for an extension of time to complete the opt-in period [209] is denied.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       May 2, 2021